UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO. 4:14CV-00022-JHM**

**BEAU BROOKS and TINA BROOKS**                                         **PLAINTIFFS**

**V.**

**CATERPILLAR GLOBAL MINING AMERICA, LLC**                   **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on motions by Defendant, Caterpillar Global Mining America, LLC, to preclude the testimony of Plaintiffs' experts, Thomas Boutaugh and Jack Spadaro [DN 37, DN 36]. Fully briefed, this matter is ripe for decision.

**I. BACKGROUND**

This is a product-liability case against Defendant, Caterpillar Global Mining America, LLC ("Caterpillar), arising out of an accident that happened in May of 2013. Plaintiff, Beau Brooks, a Western Kentucky coal miner, sustained injuries to his left hand when his hand was crushed between a rib of coal and a Caterpillar RB220 Roof Bolter. Plaintiffs allege that the injury occurred because Brooks was holding onto the operator handle of the roof bolter that extended his hand beyond the roof and outside the protective operator compartment. Plaintiffs contend that the crush injuries would not have occurred if Caterpillar's operator handle had not been located so close to the edge of the roof bolter's operator compartment that Brooks left hand was left unprotected. Plaintiffs maintain that the location of the handle rendered the roof bolter defective. Brooks and his wife sued Caterpillar. Plaintiffs' experts opine that the handle should have been located farther inside the cab, and such a placement of the handle would have prevented the accident.

## II. DISCUSSION

In support of their claims against Caterpillar, Plaintiffs have indicated their intent to call as expert witnesses Thomas Boutaugh and Jack Spadaro. Caterpillar moves the Court to preclude the testimony of these experts at trial arguing that their testimony does not meet the standards of Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Caterpillar argues that these witnesses are not qualified to offer design and manufacturing opinions, and even if they were, the methodology by which they reach their opinions is entirely subjective and insufficient to satisfy Daubert. Plaintiffs object to the motions to exclude arguing that both experts will assist the trier of fact in understanding the environment in which the subject Caterpillar RB220 Roof Bolter is used and how the location of the operator handle made the roof bolter unacceptably dangerous for the operator. After a review of the Defendant's arguments with respect to these experts, the Court declines to exclude their testimony.

### A. Standard

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert evidence is both reliable and relevant. Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 407 (6th Cir. 2006) (citing Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999)).

> Parsing the language of the Rule, it is evident that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Id. Third, the testimony must be reliable. Id.

In re Scrap Metal Antitrust Litig., 527 F.3d 517, 528-29 (6th Cir. 2008). "Rule 702 guides the trial court by providing general standards to assess reliability." Id.

In determining whether testimony is reliable, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. The Supreme Court identified a non-exhaustive list of factors that may help the Court in assessing the reliability of a proposed expert's opinion. These factors include: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." Id. at 592–94. This gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead extends to "all 'scientific,' 'technical,' or 'other specialized' matters" within the scope of Rule 702. Kumho Tire Co., 526 U.S. at 147. Whether the Court applies these factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Kumho Tire Co., 526 U.S. at 150 (quotation omitted). Any weakness in the underlying factual basis bears on the weight, as opposed to admissibility, of the evidence. In re Scrap Metal Antitrust Litig., 527 F.3d at 530 (citation omitted).

### B. Expert testimony of Thomas Boutaugh

Defendant moves to exclude the testimony of Plaintiffs' expert, Thomas Boutaugh

3

arguing that (1) Boutaugh is not qualified to offer opinions on the design of underground mining equipment; (2) Boutaugh's testimony is not relevant; and (3) Boutaugh's opinions lack a sufficiently reliable basis.

### 1. Qualification to Offer Opinions on the Design of Mining Equipment

Defendant maintains that while Boutaugh's background and expertise is in mining engineering, he does not possess the knowledge, skill, experience, training, or education that qualifies him to offer opinions about the design of underground mining equipment. According to Defendants, Boutaugh has never been retained by or worked for the manufacture of mining equipment. He has never been involved with the design or manufacture of mining equipment. Thus, Defendant argues that Boutaugh lacks expertise as an equipment designer, and as a result, he is simply not qualified to offer opinions about the design of underground mining equipment. The Court disagrees.

The record reflects that Boutaugh has a Bachelor's Degree in Mining Engineering and is a licensed Professional Engineer in several states and a certified Mine Safety and Health Administration Instructor. Boutaugh has over thirty-five years of experience as a mining engineer. Currently, he is a project engineer in the design and construction of mines and mineral processing facilities. He has designed coal mines, including the height of coal seam walls, widths of the coal ribs, methods for extraction, equipment to be used, and overall management of mining operations. Boutaugh represents that during his thirty-five years as a mining engineer, he has operated roof bolters, witnessed roof bolters operate, and observed them in underground coal mines. Boutaugh testified that as an engineer, he has designed equipment for use in distribution facilities. Boutaugh represents that he is familiar with the environment of coal mines and, based upon his education, experience, and training, knows the specifications equipment must meet to

4

operate safely in the environment of underground coal mines. As a licensed professional engineer, he is the person responsible for the end product of the equipment, mines, and factories he designs.

Furthermore, the fact that Boutaugh never personally designed a roof bolter or a Caterpillar RB220 Roof Bolter prior to his opinions rendered in this case does not disqualify him as an expert. "The federal courts in a number of product liability cases involving engineering experts have permitted an expert witness with general knowledge to give expert testimony where the subject of that testimony related to such general knowledge but the expert had no specialized knowledge of the particular product." Burke ex rel. Burke v. U-Haul Int'l, Inc., 2006 WL 3043421, *4 (W.D. Ky. Oct. 20, 2006 (court permitted expert qualified in vehicle dynamics to opine how a tow dolly reacted to an accident, even though the expert had no particular experience with tow dollies) )(citing DaSilva v. American Brands, Inc., 845 F.2d 356, 361 (1st Cir. 1988)). The Court considers a proposed expert's "full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000).

In the present case, Boutaugh offers expert testimony regarding the design and, specifically, the location of the operator handle from a safety standpoint. Boutaugh is not offering an expert opinion on the mechanical and design components of other elements of the RB220 Roof Bolter. The Court finds that Boutaugh's knowledge as an engineer and his experience as both a mining and a project engineer qualify him to be able to offer opinions about whether the location of the operator handle on the Caterpillar RB220 Roof Bolter rendered it a defective and unreasonably dangerous piece of equipment. Boutaugh's lack of practical experience designing safety features on roof bolters is an issue of weight best suited for cross-

examination. See Poulter v. Cottrell, Inc., 2014 WL 5293595, *2 (N.D. Ill. June 24, 2014).

### 2. Relevant

In a products liability case, "[n]egligence and strict liability theories of recovery overlap to the degree that, in either instance, the plaintiff must prove the product was defective and the legal cause of the injury." Shea v. Bombardier Recreational Products, Inc., 2012 WL 4839527, *4 (Ky. App. 2012)(citing Tipton v. Michelin Tire Co., 101 F.3d 1145, 1150 (6th Cir. 1996)). See also Hinken v. Sears Roebuck and Co., 2015 WL 165027, *3 (E.D. Ky. Jan. 13, 2015); Yonts v. Easton Technical Products, Inc., 2015 WL 3408937, *5 (W.D. Ky. May 27, 2015). "The ultimate question is whether the product creates 'such a risk' of an accident of the general nature of the one in question 'that an ordinarily prudent company engaged in the manufacture' of such a product 'would not have put it on the market.'" Yonts, 2015 WL 3408937, *5(quoting Montgomery Elevator Co. v. McCullough by MucCullough, 676 S.W.2d 776, 780, 782 (Ky.1984)).

Defendant contends that Boutaugh's expert opinion should be excluded because Boutaugh holds no opinion that the as-designed location of the handhold and design of the canopy rendered the product at issue defective. (Boutaugh Dep. at 121.) Specifically, Defendant cites to Boutaugh's deposition testimony in which he stated that he wasn't saying the RB220 roof bolter was defective or unreasonably dangerous. (Id.) In response, Plaintiffs argue that Caterpillar attempts to distort Boutaugh's deposition testimony. According to Plaintiffs, Caterpillar's deposition of Boutaugh was the first deposition he has ever given. When Caterpillar's counsel inquired if the location of the operator handle made the "overall machine defective," Boutaugh believed counsel meant the working condition of the machine, such as motor, pinning capability, etc., and answered "no."

Plaintiffs represent that Boutaugh will testify that Caterpillar should have reasonably expected persons using the RB220 Roof Bolter to contact walls of coal while tramming, or driving the equipment. Additionally, Boutaugh will testify that Caterpillar enhanced the danger to the miners using the RB220 by its placement of the operator handle so close to the outside of the operator's canopy rendering the roof bolter defective. (Boutaugh Report and Affidavit.) Further, Boutaugh testified at his deposition that the location of the operator handle on the subject RB220 was a "dangerous location." (Boutaugh Dep. at 123-124.) Similarly, Boutaugh's Report indicated that a reasonably prudent engineer would not have designed the operator handle so close to the edge to expose the operator to hazards outside the canopy. Boutaugh also opined in his Report that the location of the operator handle caused Brooks' injuries and crushed hand. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevant evidence is admissible under Federal Rule of Evidence 402. V & M Star Steel v. Centimark Corp., 678 F.3d 459, 468 (6th Cir. 2012). Boutaugh's opinions that Caterpillar was negligent in the placement of the operator handle and that the placement of the operator handle exposed coal miners, including Brooks, to dangerous and hazardous conditions is directly relevant to the key issues of this case. Furthermore, Boutaugh's proposed testimony regarding alternative designs which could have prevented Brooks' injuries is also relevant to the issues in this case.

### 3. Reliable Basis

"Experts are permitted a wide latitude in their opinions, including those not based on firsthand knowledge, so long as the 'expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'" Jahn v. Equine Services., PSC, 233 F.3d 382, 388 (6th Cir.

7

2000)(quoting Daubert, 509 U.S. at 592). "'[A] trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" Dilts v. United Group Services, LLC, 500 Fed. Appx. 440, 445 (6th Cir. 2012)(quoting Kumho Tire, 526 U.S. at 152).

Defendant seeks to exclude the expert testimony of Boutaugh arguing that his opinions lack a sufficiently reliable basis. Defendant contends that Boutaugh has no experience on which to base his opinion about the purpose of the handhold or his opinion that the handhold's position necessarily exposes a part of the operator's hand to the area outside the canopy. Defendant argues that Boutaugh should not be permitted to testify because Boutaugh never inspected the subject RB220 Roof Bolter, never operated a RB220 Roof Bolter, never spoke to anyone who has operated one, never operated any roof bolter, and never observed an operator use a handhold while operating a roof bolter. Further, Defendant contends that Boutaugh possesses no reliable factual basis for his opinions related to the design considerations that went into placing the handhold at the location in question.

A review of Boutaugh's report indicates that he relied upon Caterpillar's own technical drawings that document the location of the operator handle. Based on these technical drawings, Boutaugh opines that the location of the operator handle places miners' hands outside the protection of the canopy of the roof bolter. Specifically, the outer edge of the handle is only .68 inches from the outside edge of the canopy. Boutaugh also relied upon photographs taken by Charles Mahlinger of Brooks' hand holding a tube that is the same diameter as the RB220 handle with specific measurements of Brooks' hand in relation to the metal tube. Further, Boutaugh reviewed deposition testimony from coal miners who operated the machine, including Brooks, Andrew Johnson, and Chad Baldwin to confirm how the operator handle is used. Specifically,

these miners testified that the operator had to hold onto the RB220 Roof Bolter operator handle while tramming just to stay in the operator's compartment because it is so narrow and small. Finally, Boutaugh reviewed a video published by the predecessor manufacturer of the RB220 Roof Bolter that shows a roof bolter operator tramming while holding onto the operator handle.

While Boutaugh did not inspect the subject RB220 Roof Bolter, did not measure the RB220 Roof Bolter, or design a roof bolter in his career, this information goes to the weight and credibility of the evidence. Boutaugh's background and testimony suggest he is a licensed engineer with over thirty-five year experience in underground coal mines, has observed roof bolters in use, studied the technical drawings of the operator handle, and is aware of the dangers that the mines present to the operation of such equipment. Boutaugh's opinions possess a sufficiently reliable basis.

### C. Expert testimony of Jack Spadaro

Defendant likewise moves to exclude the testimony of Plaintiff's expert, Jack Spadaro, arguing that (1) Spadaro is not qualified to offer opinions on the design of underground mining equipment; and (2) Spadaro's testimony is cumulative.

#### 1. Qualification to Offer Opinions on the Design of Mining Equipment

As argued previously with respect to Boutaugh's qualifications, Defendant also maintains that while Spadaro's background and expertise is in mining engineering, he does not possess the knowledge, skill, experience, training, or education that qualifies him to offer opinions about the design of underground mining equipment. The Court disagrees.

The record reflects that Spadaro has a degree in mine engineering from West Virginia University. He is a certified mine inspector and mining engineer. During his forty year career, Spadaro worked as a mining engineer, division chief for the West Virginia Department of

Resources, and as Superintendent of the MSHA Academy from 1998 to 2014. MSHA is responsible for enforcing safety guidelines in surface and underground coal mines across the United States. During his early career, Spadaro worked in the mines every day and operated roof bolters and other mining equipment. While he was Superintendent of the MSHA training facility, Spadaro attended annual seminars addressing safety of machines and equipment in the coal mines. Spadaro represents that he is familiar with the environment of coal mines and, based upon his education, experience, and training as a mine inspector, knows the specifications equipment must meet to operate safely in the environment of underground coal mines. In previous trials, Spadaro has been qualified to offer testimony in both federal and state courts regarding the design safety aspect of equipment in coal mines.

Furthermore, the fact that Spadaro never personally designed a roof bolter or a Caterpillar RB220 Roof Bolter prior to his opinions rendered in this case does not disqualify him as an expert. As noted above, "[t]he federal courts in a number of product liability cases involving engineering experts have permitted an expert witness with general knowledge to give expert testimony where the subject of that testimony related to such general knowledge but the expert had no specialized knowledge of the particular product." Burke, 2006 WL 3043421, *4. For the same reasons discussed with respect to the testimony of Boutaugh, the Court finds that Spadaro's knowledge as an engineer and his experience as a mining engineer and a certified mine inspector qualify him to be able to offer opinions about whether the location of the operator handle on the Caterpillar RB220 Roof Bolter rendered it defective and unreasonably dangerous. Spadaro's lack of practical experience designing safety features on roof bolters is an issue of weight best suited for cross-examination. See Poulter v. Cottrell, Inc., 2014 WL 5293595, *2 (N.D. Ill. June 24, 2014).

## 2. Cumulative Testimony

In addition to challenging Spadarao's qualifications, Caterpillar moves to exclude his testimony arguing that Spadaro relied entirely on Thomas Boutaugh's report to form his opinion and that Spadaro's testimony and opinions are cumulative of the expected testimony of Boutaugh. "It is within the power of the court to exclude testimony that is repetitious and cumulative of testimony already offered at trial." Walker ex rel. his Court Appointed Curator v. United Healthcare of Hardin, Inc., 2010 WL 3092648, *1 (W.D. Ky. Aug. 6, 2010)(citing Tran v. Toyota Motor Corp., 420 F.3d 1310, 1315 (11th Cir. 2005) (noting that part of trial court's broad authority over trial management is the power to exclude cumulative testimony)). Specifically, like other testimony, expert testimony may be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Id. (citing Fed. R. Evid. 403).

First, courts have determined that "it is acceptable for an expert to base an opinion on testing performed by other individuals." Worthington Cylinder Corp. v. Schrader-Bridgeport Int'l, Inc., 2014 WL 1330062, *6 (S.D. Ohio Apr. 1, 2014); see also Burke ex rel. Burke v. U-Haul Int'l, Inc., 2006 WL 3043421, at *7 (W.D. Ky. Oct. 20, 2006). Furthermore, while Spadaro utilized the technical drawings and photographs supplied by Boutaugh in evaluating the safety of the roof bolter in question, Spadaro also relied on other information. Spadaro's report reflects that he also relied upon his knowledge of the RB220; his experience and extensive observations of the environment which exists in underground coal mines; his knowledge of the types of equipment used in an underground mine and how certain pieces of equipment interact with the

coal mining environment; and his knowledge of the MSHA regulations and the Caterpillar RB220 and Maintenance Manual.

Second, the Court finds that Spadaro's testimony is not needlessly cumulative.[1] Contrary to Defendant's arguments, reliance by Spadaro on another expert's opinion does not render his testimony cumulative. Walker, 2010 WL 3092648, *1. Although both Boutaugh and Spadaro ultimately reach the same conclusion— the location of the operator handle on the Caterpillar RB220 Roof Bolter rendered it in a defective and unreasonably dangerous condition, their testimony appears to be complimentary, not cumulative. Cawley v. Eastman Outdoors, Inc., 2015 WL 4256117, *1 (N.D. Ohio Jan. 25, 2015). Plaintiff correctly notes that the two experts offer a different perspective of the conditions of the underground coal mines and expected safety concerns a manufacturer must consider in designing its equipment. Their training and experience are different. Boutaugh's background involves that of a licensed engineer and project engineer who has designed coal mines and designed certain processing equipment. On the other hand, Spadaro specializes in mine safety, including equipment in underground mines. Spadaro will testify about the duty established by federal regulations for mining equipment manufactured and intended to be used in underground coal mines including the requirement of canopies covering equipment in underground mines. "Nothing about their likely testimony suggests the dangers contemplated by Rule 403 substantially outweigh the probative value." Cawley, 2015 WL 4256117, *1.

### III. CONCLUSION

For the reasons set forth above, the motions in limine by Defendant, Caterpillar Global Mining America, LLC, to preclude testimony of Plaintiffs' experts, Thomas Boutaugh and Jack

---

[1] See Bowman v. Corrections Corp. of America, 350 F.3d 537, 547 (6th Cir.2003)(noting "discretionary" nature of decision to exclude expert testimony deemed "cumulative or redundant under Fed. R. Evid. 403") (quotation omitted); E.E.O.C. v. Wal-Mart Stores, Inc., 2008 WL 6692465, at *3 (E.D. Ky. Nov. 13, 2008).

Spadaro, [DN 37, DN 36] are **DENIED**.

cc: counsel of record

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

January 20, 2016