## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO. 4:14CV-00022-JHM**

**BEAU BROOKS and TINA BROOKS**                                           **PLAINTIFFS**

**V.**

**CATERPILLAR GLOBAL MINING AMERICA, LLC**                      **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, Caterpillar Global Mining America, LLC, to preclude or limit the testimony of Plaintiffs' experts, Leonard Matheson and Stan Smith, [DN 65] and on a motion by Defendant to limit the testimony of expert Stan Smith regarding Plaintiff's alleged "destruction of power to labor and earn money" [DN 70]. Fully briefed, this matter is ripe for decision.

### I. BACKGROUND

This is a product-liability case against Defendant, Caterpillar Global Mining America, LLC ("Caterpillar), arising out of an accident that happened in May of 2013. Plaintiff, Beau Brooks, a Western Kentucky coal miner, sustained injuries to his left hand when his hand was crushed between a rib of coal and a Caterpillar RB220 Roof Bolter. Plaintiffs allege that the injury occurred because Brooks was holding onto the operator handle of the roof bolter that extended his hand beyond the roof and outside the protective operator compartment. Plaintiffs contend that the crush injuries would not have occurred if Caterpillar's operator handle had not been located so close to the edge of the roof bolter's operator compartment that Brooks left hand was left unprotected. Plaintiffs maintain that the location of the handle rendered the roof bolter defective. Brooks and his wife sued Caterpillar.

## II. DISCUSSION

In support of their claims against Caterpillar, Plaintiffs have indicated their intent to call as expert witnesses Dr. Leonard Matheson and Dr. Stan Smith.  Caterpillar moves the Court to preclude or limit the testimony of these experts at trial arguing that their testimony does not meet the standards of  Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

### A.  Standard

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert evidence is both reliable and relevant. Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 407 (6th Cir. 2006) (citing Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999)).

> Parsing the language of the Rule, it is evident that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.  Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Id. Third, the testimony must be reliable. Id.

In re Scrap Metal Antitrust Litig., 527 F.3d 517, 528-29 (6th Cir. 2008).  "Rule 702 guides the trial court by providing general standards to assess reliability." Id.

In determining whether testimony is reliable, the Court's focus "must be solely on

2

principles and methodology, not on the conclusions that they generate." <u>Daubert</u>, 509 U.S. at 595. The Supreme Court identified a non-exhaustive list of factors that may help the Court in assessing the reliability of a proposed expert's opinion. These factors include: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." <u>Id</u>. at 592–94. This gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead extends to "all 'scientific,' 'technical,' or 'other specialized' matters" within the scope of Rule 702. <u>Kumho Tire Co.</u>, 526 U.S. at 147.   Whether the Court applies these factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." <u>Kumho Tire Co.</u>, 526 U.S. at 150 (quotation omitted). Any weakness in the underlying factual basis bears on the weight, as opposed to admissibility, of the evidence.   <u>In re Scrap Metal Antitrust Litig.</u>, 527 F.3d at 530 (citation omitted).

## B.  Expert testimony of Matheson and Smith [DN 65]

Prior to his hand injury, Plaintiff operated a roof bolter for Armstrong Coal.  After his injury, Plaintiff could not perform his duties as a roof bolter because he could not grip the steel rods used to support the roof.  Currently, Plaintiff is working as a scoop operator in the coal mine.  The job enables Plaintiff to drive a machine more than use his left hand; however, he is required to pick up plates of glue and excess pins.  Plaintiff testified that he works through frequent pain.  Dr. Stephane Braun, Plaintiff's treating physician, testified that Plaintiff has permanent limitations with his left hand including decreased grip strength and limited range of motion.  (Braun Dep. at 22-25.)  Dr. Braun testified that he has discussed a tendon release surgery with Plaintiff to improve his function. (<u>Id</u>. at 26-27.)

3

Plaintiff was evaluated by Dr. Leonard Matheson, a board certified vocational and rehabilitation counselor in St. Louis, Missouri.  Dr. Matheson performed a battery of vocational tests on Plaintiff, including vocational battery aptitude tests, pre-employment screening, and career assessment inventory.  He also reviewed Plaintiff's medical record, conducted a personal interview, and tested his vocational capacity.  Dr. Matheson found 16 functional limitations pertinent to Plaintiff's occupational disability.  Based on his vocational capacity evaluation, he found Plaintiff's hand injury impaired his ability to work resulting in a work disability rating in the range of 25 to 30 percent.  (DN 65-05, Matheson Dep. at 118-120.)  Based on Dr. Matheson's vocational capacity testing, he concluded that Plaintiff's crushed hand will cause loss of income in the future based on three factors: (1) truncation of work life; (2) restricted access to the labor market due to his disability; and (3) delay in returning to employment.  (DN 65-04, p. 21-23.)  Dr. Matheson opines that it is probable that Plaintiff will not physically be able to continue working as a coal miner because of his vocational limitations.  Specifically, Dr. Matheson indicated that people with a work disability experience truncation of their work life for several reasons including: re-injury and difficulty in finding new employment, wear and tear as a consequence of the need to accommodate for permanent limitations, employer prejudice, relatively lower earnings, and discouragement.  (Id. at 22.)  Dr. Matheson noted that while Plaintiff has been able to maintain employment at close to his pre-injury wage rate because of his employer's accommodation, Matheson believes that Plaintiff "is at a significant risk of re-injury and wear and tear in his current employment." (Id.)  Dr. Matheson further opines that if Plaintiff is forced to stop coal mining and must reenter the workforce, the optimal job that matches his physical and mental skills is that of an over the road truck driver. (Id. at 23.)

Based upon the medical evidence from Dr. Braun and the vocational testing of Dr. Matheson, Dr. Stan Smith, an economist from Chicago, evaluated the monetary values of

4

Plaintiff's diminished earning capacity.  Dr. Smith calculated how much money the Plaintiff would lose over his lifetime if he is able to remain employed for five years or ten years at the coal mines and subsequently gains employment in a job comparable to an over the road truck driver.  (DN 65-03, p. 5-7.)   Dr. Smith specifically opines that if Plaintiff is able to work in the coal mines another 10 years, Plaintiff would lose approximately $2,695,897 if he is forced to take a job comparable to what Dr. Matheson believes he will be able to perform.

Defendant moves to exclude or limit the testimony of Plaintiffs' experts, Leonard Matheson and Stan Smith, arguing that (1) their testimony is inherently speculative and unreliable and (2) their testimony is irrelevant because Kentucky law does not permit the kind of recovery that these experts suggest would be appropriate.  Defendant argues that no federal or state law permits experts to project future losses based on speculation that a future injury will occur, even if the "increased risk" of that future injury is itself more likely than not. (Defendant's Reply at 1.)

## 1. Speculative and Unreliable

Defendant contends that Dr. Matheson and Dr. Smith assume that because Plaintiff's accident places him at an increased risk of further injury due to accident or wear and tear, he is not likely to maintain his current employment as a scoop operator in the long run.  According to Defendant, this assumption is inherently speculative and unreliable because the end of Plaintiff's current employment has not happened and Dr. Matheson cannot say it likely will happen. Defendant maintains that even if Dr. Matheson could predict the end of Plaintiff's current job, he cannot predict the nature of the event.  Finally, Defendant argues that Dr. Matheson can cite to no reliable basis for predicting that Plaintiff would be unable to find comparable employment when and if he leaves his current job.  According to Defendant, because Dr. Matheson's opinions about what the future holds for Plaintiff are inherently speculative, and because Smith's

5

calculations of Plaintiff's future economic losses are based on Dr. Matheson's predictions, the experts should be precluded from offering specific predictions about a future that has yet to materialize.

Kentucky law has long recognized that in compensating for destruction of a plaintiff's "power to earn money, there is necessarily an element of speculation involved" Com., Transp. Cabinet, Dept. of Highways v. Hinkle, 2007 WL 2565975, *2 (Ky. Ct. App. Sept. 7, 2007). While it is clear that the Defendant believes that the only potential damage that Plaintiff may recover in this case is the difference in his earnings as a roof bolter verses his current job as a scoop operator, this argument is properly made to the jury.  Based on a battery of vocational test, reliance on Bureau of Census and Department of Labor statistics, and his education, training and experience, Dr. Matheson determined Plaintiff's work-related functional limitations and opined that it is probable that Plaintiff will not physically be able to continue working as a coal miner in any capacity for his entire work life.  Based upon his training as a vocational rehabilitation counselor, Dr. Matheson further opined that if/when Plaintiff is forced to stop coal-mining, the optimal job that matches his physical and mental skills is that of an over the road truck driver. (Matheson Report at 21-23.)  Given the testimony of Dr. Matheson and the medical evidence from Dr. Braun, Dr. Smith calculated Plaintiff's loss of earning capacity. This expert testimony is not speculative and will certainly assist the jury in understanding the job market and the types of employment Plaintiff's limitations allow him to perform both currently and in the future.  Any weakness in the underlying factual basis of an expert's testimony bears on the weight, as opposed to the admissibility, of the evidence. In re Scrap Metal Antitrust Litig., 527 F.3d 517, 530 (6th Cir. 2008) (citation omitted).  While the Defendants are free to bring out these criticisms on cross-examination and through the testimony of their own experts, the Court finds that they are not grounds to exclude Dr, Matheson and Dr. Smith's testimony.

**2. Kentucky law**

Defendant maintains that Kentucky law does not permit the kind of recovery that Plaintiffs' experts' testimonies suggest would be appropriate.  Defendant argues that Kentucky law does not permit an expert to project future losses based on speculation that a future injury will occur, even if the increased risk of that future injury is itself more likely than not. Defendant contends that to permit a recovery based on an assumption that future events will come to pass as Dr. Matheson and Dr. Smith speculate they will contravenes Kentucky substantive law.  According to Defendant, permitting the recovery of general damages for an "increased risk" is not the same as "sanctioning recovery in the amount that would be appropriate if such future complications were already fully realized." Capital Holding Corp. v. Bailey, 873 S.W.2d 187 (Ky. 1994). See also Davis v. Graviss, 672 S.W.2d 928 (Ky. 1984).

Under Kentucky law, "evidence of permanent injury alone is sufficient for an instruction on permanent impairment of earning power, and . . . the jury can through their common knowledge and experience make the determination if there has been a permanent impairment of earning power, the extent of such impairment, and the amount of damages for such impairment." Reece v. Nationwide Mut. Ins. Co., 217 S.W.3d 226, 229 (Ky. 2007).  Further, when considering damages for loss of earning capacity, "it is not proper to confine the recovery to the particular profession or occupation in which plaintiff may be engaged at the time of the injury." Boland-Maloney Lumber Co. v. Burnett, 302 S.W.3d 680, 689 (Ky. Ct. App. 2009).  "Rather, it has long been the law in Kentucky that damages for loss of earning capacity are not strictly measured by actual loss or earnings but by the impairment of the plaintiff's power to earn money." Id.  In fact, the Supreme Court of Kentucky in Capital Holding Corp. v. Bailey, 873 S.W.2d 187, 195 (Ky. 1994) recognized that an increased risk of future harm is a consideration made in determining compensation for future impairment or destruction of earning power. Id. at 195 ("[A] recovery

7

for an increased risk of future harm . . . is not a new element of damages but proof that the jury should consider in compensating for future physical pain and mental suffering, for future impairment or destruction of earning power, and, if there is evidence to support it, for future medical expenses."). See also Smith v. Windstream Communications, Inc., 2013 WL 3233488, *2 (E.D. Ky. June 25, 2013).

In this case, based on the vocational assessment of Dr. Matheson, Dr. Smith will present expert testimony as to the expected future income of a person fitting Plaintiff's vocational profile without his impairments and his calculations as to the diminution of those prospects as a result of his permanent injury to his hand. Nothing in this testimony appears to be outside the norm for testimony of this type nor unduly inflammatory.  It is within the jury's "province to assess the weight and credibility to be given [the] evidence." Louisville Metro Hous. Auth. v. Burns, 198 S.W.3d 147, 152 (Ky. App. 2005). Furthermore, contrary to Defendant's argument, Capital Holding and Davis v. Graviss do not support the exclusion of the Plaintiffs' experts.  In contrast to the Plaintiff in the present case, the plaintiffs in Capital Holding had no present injury or present manifestation of harm caused by their exposure to asbestos. Capital Holding Corp., 873 S.W.2d at 195 ("if there were now a present manifestation of harm caused by the plaintiffs' exposure to asbestos, in awarding damages for future harm the jury would need to assess how much greater now is the plaintiffs' risk of developing cancer in the future than it was before the tort occurred"); Davis, 672 S.W.2d 928 (recognizes "the right to compensation for an increased likelihood of future complications arising from a realized injury other than a mere contact"). Here, the Plaintiff suffered a permanent injury to his hand which has been established to a reasonable degree of medical probability.  Based on the evidence before the Court, a jury could find that this permanent injury has caused an impairment of the power to earn money. Accordingly, Defendant's motion to preclude or limit the testimony of experts, Dr. Matheson and

8

Dr. Smith, is denied.

**C.  Stan Smith's Destruction of Power to Labor and Earn Money Testimony [DN 70]**

Defendant moves to limit the testimony of Plaintiffs' expert Stan Smith regarding his opinion of Plaintiff's destruction of the power to labor and earn money.  Specifically, Defendant requests the Court to also exclude Dr. Smith from (1) offering calculations based on the economic principles set forth in Paducah Area Library v. Terry; (2) offering opinions on what Plaintiff might earn as income in the event that he were to continue working and earning income past his reasonable work life expectancy; and (3) offering opinions on what he believes to be the applicable law.

**1.  Smith's "Total Offset" Analysis**

Defendant contends that the Court should preclude Dr. Smith from offering any calculations based on the "total offset" methodology set out in Paducah Area Library v. Terry. Defendant argues that the "total offset" method articulated in the Paducah Area Library opinion is an unreliable basis for determining the present value of alleged future economic losses.  The "total offset" method eliminates the use of any discount rate in determining the present value of a claimant's alleged future economic losses. In support of its argument, Defendant cites to Winston by Winston v. United States, 11 F. Supp. 2d 948, 949 (W.D. Ky. 1998), in which the district court held that "Paducah Library is a Kentucky evidence case, and is therefore not binding on this court." Further, the district court in Winston questioned the reliability of the "total offset" methodology.  Because of the reasoning of Winston, Defendant moves for an order excluding Smith's calculations which rely on the "total offset" methodology. In response, Plaintiffs argue that Dr. Smith's calculations utilizing the total offset methodology should be admitted, and evidence of inflation and discount rates should not be an issue in this case.

Contrary to Defendant's argument, Winston only stands for the proposition that federal

9

courts are not required to be bound by the holding of <u>Paducah Area Library</u> since it is a state court decision which could affect procedural matters.  In fact, this economic method has long been recognized in Kentucky state and federal courts as reliable.  <u>In re Air Crash at Lexington, Ky.</u>, 2008 WL 2704159, *2 (E.D. Ky. July 2, 2008); <u>Eaves v. United States</u>, 2010 WL 2106651, *4 (W.D. Ky. May 24, 2010).  The district court in <u>In re Air Crash</u> was faced with a defense motion to exclude opinions of an economic expert utilizing the total offset methodology.  The district court held that: "[i]t has been used throughout Kentucky for years and is based on sound logic; it eliminates the bias experts can inject through the use of various discount and inflation rates; and it will save substantial time and reduce the likelihood of jury confusion in this upcoming trial. The Court finds this methodology reliable." <u>In re Air Crash at Lexington, Ky.</u>, 2008 WL 2704159, at *2 (E.D. Ky. July 2, 2008).  In addition to finding the "total offset" method reliable, the district court excluded evidence of "present value, inflation of discount rates." <u>Id</u>.

Further, the United States Supreme Court has recognized the "total offset" methodology as acceptable so long as it is the result of "a deliberate choice, rather than assuming that it is bound by a rule of state law." <u>Jones & Laughlin Steel Corp. v. Pfeifer</u>, 462 U.S. 523, 552-53 (1983).  The Court recognizes that it is not bound to follow the total offset method simply because Kentucky courts do. "The admissibility of expert testimony is a matter of federal, rather than state, procedure. Therefore, whether an expert should be permitted to testify is controlled by federal law." <u>Brooks v. American Broadcasting Companies, Inc.</u>, 999 F.2d 167, 173 (6th Cir.). <u>See also</u> <u>Amburgey v. United States</u>, 2016 WL 850817, *2 (E.D. Ky. Mar. 2, 2016)

For these reasons, the Defendant's motion to exclude Dr. Smith's calculation of the present value of Plaintiff's future lost wages using the total offset method is denied.  The parties have not sufficiently addressed Plaintiff's brief statement in his response that evidence of

10

inflation and discount rates should be excluded from the trial of this matter.

**2. Projection of Plaintiff's Economic Losses Past any Realistic Work Life Expectancy**

Defendant moves the Court to preclude Dr. Smith from offering opinions on what Plaintiff might earn as income in the event that he were to continue working and earning income past his reasonable work life expectancy.   According to Defendant, Dr. Smith extrapolates Plaintiff's total income stream through age 78 and suggests it should be left up to the jury to decide what Plaintiff's reasonable work life expectancy would have been before and after the accident.   Defendant complains that Dr. Smith has failed to offer the factfinder any guidance on what Plaintiff's expected work life would have been.   Defendant also objects to Plaintiff's statement that earnings capacity is not measured by work life.

Plaintiffs maintain that evidence of permanent injury alone is sufficient for an instruction on permanent impairment of earning power in Kentucky.  Reece v. Nationwide, 217 S.W.3d 226 (Ky. 2007).   The Kentucky Supreme Court in Reece held that "[w]e hold that evidence of permanent injury alone is sufficient for an instruction on permanent impairment of earning power, and that the jury can through their common knowledge and experience make the determination if there has been a permanent impairment of earning power, the extent of such impairment, and the amount of damages for such impairment." Reece v. Nationwide Mut. Ins. Co., 217 S.W.3d 226, 229 (Ky. 2007).  See also Louisville Metro Hous. Auth., 198 S.W.3d at 151 ("The jury in this case had before them, and had the right to consider in determining the pecuniary loss sustained by the widow, the earning capacity, age, health, habits, character, occupation, expectancy of life, and mental and physical disposition to labor of the deceased.").

The Court agrees with the Plaintiffs that it is not unreasonable for a jury to be provided evidence on what the Plaintiff could earn over his lifetime.  Dr. Smith determined that the life

expectancy of a 29 year old male in the United States is 78.1 years of age.  Based upon this, Dr. Smith calculated Plaintiff's potential earnings until 78 in several tables which reflect the amount of potential earnings he would lose for each year from the age of 29 to the age of 78. Interestingly, on page 13 of Dr. Smith's Report he calculated pre-injury employment to age 67 and post-injury employment thru age 62.[1]   (Smith Report at 13).   Medical and vocational evidence, coupled with lay witness evidence, will aid the jury in determining how long Plaintiff would have worked pre-injury and how long he will be able to work post-injury. The jury can then use the corresponding year on the table to determine the appropriate amount of damages. (Smith Report at 5.)   The jury may consider all the factors listed above in determining Plaintiff's permanent impairment on the power to earn money.

As noted above, any weakness in the underlying factual basis of an expert's testimony bears on the weight, as opposed to the admissibility, of the evidence. In re Scrap Metal Antitrust Litig., 527 F.3d 517, 530 (6th Cir. 2008) (citation omitted). Here, the Defendant's criticisms relate to the underlying factual basis – how long would a coal miner actually work (62 to 78.1 years of age) and how long can Plaintiff continue to work as a scoop operator. While the Defendants are free to bring out criticisms of the opinions of Plaintiffs' experts regarding work life expectancy on cross-examination, the Court finds that these criticisms are not grounds to exclude Dr. Matheson or Dr. Smith's testimony.   See In Re Air Crash at Lexington, Kentucky, 2009 WL 6056004 (E.D. Ky. June 3, 2009)("The authority cited by Comair does not support its claim that no evidence is admissible unless it is based on work-life expectancy. Comair's motion demonstrates its preparedness to take issue with Dr. Baldwin's projections through cross examination. It is the opinion of this Court that projections of loss of earning capacity are

---

[1] In the deposition testimony of Dr. Matheson, he testified that the target for expected work life is 67 years of age.  (Matheson Dep. at 138.)

admissible, but subject to challenge by cross examination or rebuttal expert witness.").

Accordingly, the motion in limine to preclude Dr. Smith from offering opinions on what Plaintiff might earn as income in the event that he were to continue working and earning income past his reasonable work life expectancy is denied.

### 3. Testimony on Applicable Law

Defendant maintains that two distinctly legal presumptions run throughout Dr. Smith's testimony and opinions.  The first legal presumption is that the state court decision of Paducah Area Public Library v. Terry, 655 S.W.2d 19 (Ky. Ct. App. 1983), governs the determination of the "present worth" of a claimant's alleged future economic losses. Both Dr. Smith's expert report and his deposition testimony refer to this case. The second legal presumption is that as a matter of law, a claimant's work life expectancy is irrelevant to the determination of a claimant's alleged future economic losses in Kentucky.  Defendant moves to preclude Dr. Smith from suggesting to the jury that these or any other legal propositions govern the determination of damages in this case.  Defendant maintains that Dr. Smith is not qualified to offer opinions about what the law is.  Further, Defendant argues that permitting such testimony would run afoul of Rule 403.

In response, Plaintiffs state that they do not disagree with Defendant's position that witnesses generally do not address the actual law to the jury.  Plaintiffs represent that they do not plan to offer testimony to the jury about the specific information contained in the Paducah Area Library case.  However, Plaintiffs note that if Dr. Smith is cross-examined as to why he did not evaluate Plaintiff's loss of earning capacity values with the rates of inflation and/or interest rates, then he should be able to explain why he did not use those factors in his analysis.  Further, Plaintiff states that Dr. Smith should be able to discuss the economic methodologies on which he relied and be able to address economic principles even though they are part of a legal case.

Plaintiffs contend that Dr. Smith's discussion of his understanding of economic principles is not a discussion of law for the jury, but instead a discussion of economics.  The explanation only becomes necessary if the Defendant cross-examines Dr. Smith as to why he did not evaluate the rate of inflation and/or discount rate.

Defendant's motion in limine on this issue is granted in part.  Dr. Smith shall not testify regarding the law.  Instead, Dr. Smith's testimony regarding the total offset method should be limited to an explanation of his rationale for using the method from an economic perspective.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion in limine by Defendant, Caterpillar Global Mining America, LLC, to preclude or limit the testimony of Plaintiffs' experts, Leonard Matheson and Stan Smith [DN 65] is **DENIED.**

**IT IS FURTHER ORDERED** that the motion to limit the testimony of expert Stan Smith regarding Plaintiff's alleged "destruction of power to labor and earn money" [DN 70] is **GRANTED IN PART AND DENIED IN PART** consistent with this Opinion.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

July 6, 2016

cc: counsel of record

14