IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

_____
                                           )
**BEAU BROOKS and TINA BROOKS**            )
                                           )
                **PLAINTIFFS**            )  Civil Action No. 4:14cv-00022-JHM
v.                                         )  CHIEF JUDGE JOSEPH H. MCKINLEY, JR.
                                           )
**CATERPILLAR GLOBAL MINING**              )
**AMERICA, LLC**                           )
                                           )
                **DEFENDANT**            )
_____

## MEMORANDUM OPINION AND ORDER

Defendant Caterpillar Global Mining America, LLC ("CGM") has filed a motion for a protective order regarding depositions of Rule 30(b)(6) witnesses (DN 86). The Plaintiffs' response is at DN 93 and CGM's reply at DN 94.

### Nature of the Case

Plaintiff, Beau Brooks, a Western Kentucky coal miner, was injured when his left hand was crushed between a rib of coal and the protective operator canopy of a CGM RB220 Roof Bolter. A roof bolter is a large machine used in underground mining operations and, as the name suggests, is used to drive large bolts through the roof of the mining cavern to prevent the roof from collapsing. The operator rides beneath a protective canopy and, on this model, an overhead handle was affixed to the canopy to assist the operator with ingress and egress. Plaintiffs contend that Brooks was grasping the handle while operating the equipment and the handle was located so close to the edge

of the canopy that it extended Brooks' hand beyond the protective operator compartment. Plaintiffs' experts opine that the handle should have been located farther inside the cab, which would have prevented the accident.

The RB220 roof bolter was originally designed in 1990 by Simmons Rand Company. Simmons Rand was acquired by Long-Airdox Company, which added the handle in 1998. Long-Airdox was acquired by DBT which, in turn, as acquired by Bucyrus International, Inc. and which, finally, was acquired by Caterpillar Inc. Bucyrus changed its name to Caterpillar Global Mining America, LLC (as referred to herein as "CGM"). CGM continued to manufacture the RB220 as a "legacy product." CGM discontinued selling the RB220 in 2015 (DN 86-1, p. 10).

## Nature of the Discovery Dispute

Plaintiffs submitted a notice of deposition to CGM for production of one or more corporate designees pursuant to Fed. R. Civ. P. 30(b)(6). The Plaintiffs identified 15 topics of questioning in detail (DN 86-2). In response to the notice of deposition, CGM served Plaintiffs with objections to the notice (DN 86-3). CGM's objections can be summarized as follows:

1. That the breadth of the inquiries was excessive;
2. That the inquiries extended to products other than the RB220 or similar products;
3. That the inquiries included other entities beyond CGM;
4. That some of the inquiries encroached upon work product and attorney-client privilege; and,

      5. That one inquiry went beyond the scope of a corporate representative deposition and seeks legal conclusions.

Notwithstanding these objections, CGM produced two corporate representatives for deposition on January 21, 2016. These were Jeff Rector ("Rector") and Chris Christophorou ("Christophorou"). Rector is an engineering manager for CGM, where he has been involved in transportation products since 2003. Christophorou is a mechanical engineer serving as a program manager with CGM since 2014. The witnesses were unable to answer all of the questions Plaintiffs asked during the depositions and Plaintiffs, in response to CGM's motion, seek a ruling that CGM should be required to produce additional corporate designees. CGM contends that it should not have to produce additional witnesses, as the remaining areas of inquiry deal with irrelevant issues. The present discovery dispute thus presents two questions. First, did CGM adequately comply with the Rule 30(b)(6) deposition notice? Second, are the remaining topics of discovery relevant?

      1. <u>Adequacy of CGM's Compliance with the Rule 30(b)(6) Notice of Deposition.</u>

Rule 30(b)(6) provides that a party may name a business entity as a deponent. The noticing party must describe with reasonable particularity in the notice of deposition the matters upon which the deponent will be examined. In response, the named business entity must designate one or more representatives as deponents. The persons so designated must "testify about information known or reasonably available to the organization."

Under Fed. R. Civ. P. 37(d)(1)(A), the Court may impose sanctions if a designated 30(b)(6) witness fails to appear on proper notice. If a party fails to educate its 30(b)(6) witness with respect to the corporation's full knowledge of the topics noticed for deposition, this failure is effectively a failure to appear for purposes of Rule 37(d). Janko Enterprises, Inc. v. Long John Silver's, Inc., No. 3:12-CV-345-S, 2014 U.S. Dist. LEXIS 185334, *17-18 (W.D. Ky. April 3, 2014). Rule 37(d)(2) instructs that a failure to appear on the grounds that the discovery sought is objectionable is not excused unless the party failing to act has a pending motion for a protective order.

CGM elected not to seek a protective order in advance of the depositions and, consequently, CGM's objections to certain aspects of the deposition notice do not relieve it of the obligation to produce witnesses fully prepared to respond to the full scope of topics identified in the notice. "[A] company may not circumvent its obligation to prepare its Rule 30(b)(6) witness to 'answer fully and without evasion all questions about the designated subject matter' 'simply by producing a witness without knowledge of the subjects believed to be irrelevant.'" Champion Foodservice, LLC v. Vista Food Exchange, Inc., No. 1:13-cv-1195, 2016 U.S. Dist. LEXIS 1129820, *40, fn. 35 (N.D. Ohio Aug. 23, 2016) (quoting Painter-Payne v. Vesta W. Bay, LLC, No. 2:12-cv-00912, 2014 U.S. Dist. LEXIS 55020, *3 (S.D. Ohio Apr. 21, 2014)), see also Continental Cas. Co. v. Compass Bank, No. CA 04-0766-KD-C, 2006 U.S. Dist. LEXIS 12288, *67-68 (S.D. Ala. March 3, 2006) (Defense counsel "could object to his heart's content" as to irrelevance of testimony, but, in the absence of a protective order, the 30(b)(6) designee was required to answer all questions). As a consequence, CGM's arguments as to the

relevance of the topics do not weigh on the question of whether it fully complied with the Rule 30(b)(6) deposition notice. The inquiry must focus solely on whether CGM's witnesses were prepared to testify regarding information known or reasonably available to it.

    A. <u>Part 1 of the deposition notice.</u>

> 1. The identity of any and all persons and/or representatives from CGM who performed, administered, and/or had any responsibilities of risk assessment/analysis for CGM machines, equipment, and product lines between January 1, 2010 to present.

Rector testified that he was presented as a witness as to all of the topics designated in the notice of deposition for the time frame predating 2015 (DN 86-4, p. 6-7). Rector testified that he could not provide the names of all relevant individuals because risk assessment was performed as a group of representatives from different divisions. He was able to identify three specific individuals who participated in the risk assessment of the RB260[1], but was only able to provide one additional name for other CGM products. As Rector indicated he was answering questions for the time frame predating 2015, this question fell within his realm of designation; however, he was not fully prepared to provide the requested information (DN 86-4, p. 7-13). Christophorou testified that he was not prepared to offer testimony on this subject (DN 86-5, p. 31-32).

---

[1] As discussed later in this order, the RB260 is a different model roof bolter which currently exists only as a prototype.

B. <u>Part 2 of the deposition notice.</u>

> 2. CGM risk assessment/analysis process, including a complete description of how CGM product lines and/or equipment are assessed for potential hazards and safety concerns, including but not limited to risk analysis/assessment performed on product lines acquired by CGM from other entities, CGM's existing product lines, new product lines, and how these risk analysis were conducted from January 1, 2010 to present.

Rector deferred to Christophorou for in-depth explanation of CGM's current risk analysis procedure (DN 84-4, p. 14). Rector was unprepared to answer questions regarding past risk analysis procedures and could only defer to other persons in the company who would be better qualified to answer (DN 89-4, p. 15-31). Christophorou testified that he was not prepared to offer testimony on this subject (DN 86-5, p. 32).

C. <u>Part 3 of the deposition notice.</u>

> 3. CGM's policies and procedures in regards to risk assessment/analysis of its product lines, including but not limited to any written documentation and/or guidelines as to how and when risk assessments are to be conducted on product lines acquired by CGM and/or Caterpillar, Inc. from other entities, existing product lines, new products; including the policies and procedures of CGM from January 1, 2010 to present.

Rector testified that, with respect to the specific model of equipment involved in this case, the RB220, CGM did not perform a risk assessment when it acquired the product because it was a "proven safe product." As to CGM's policies and procedures for risk assessment of other products, he testified that there were assessment tools within Caterpillar, Inc. to which CGM had access. Rector testified that he was familiar with the

utilization of the ISO 12100 standard, but was not able to identify any other policy or procedure for risk assessment and analysis (DN 86-4, p. 31-41). Christophorou testified that he was not prepared to offer any testimony on the subject (DN 86-5, p. 33).

<u>Part 4 of the deposition notice.</u>

> 4. Steps taken by CGM to comply with American National Standards Institute ("ANSI") and International Organization for Standardization ("ISO") standards in regards to evaluating the reasonable foreseeable misuses of all products it places in the stream of commerce, specifically injuries which may result from predictable human behavior, from January 1, 2010 to present. This includes specific details as to the identification of environment of use for its products and equipment, identification of tasks to be performed by products and equipment, and identification of potential hazards

Although Rector did provide some information about CGI's use of a particular ISO standard, he was unable to answer any questions relative to ANSI standards and deferred to other CGM employees, including Christophorou (although he stated he did not know the extent of Christophorou's knowledge predating his joining CGM in 2015). Rector was not fully prepared to provide testimony on the entire scope of inquiry specified in deposition notice part 4 (DN 86-4, p.41-43). Plaintiffs asked Christophorou if he was prepared to offer testimony on this subject for the time frame "before you came to work for [CGM]?" (DN 86-5, p. 33-34). It does not appear that Plaintiffs pursued questioning with Christophorou on this topic to the extent he had knowledge for the period of time after he joined CGM to the present.

D.  Parts 5, 6 and 7 of the deposition notice.

5. Any risk assessment/analysis performed on any roof bolters or roof bolting product lines acquired by CGM and/or Caterpillar, Inc., including the RB220 roof bolters, manufactured, and or sold by CGM from January 1, 2010 to present.

6. Any information regarding and/or pertaining to any and all risk assessment/analysis performed on the roof bolting product line and roof bolting equipment acquired from Bucyrus International before or after the line was acquired by CGM and/or Caterpillar, Inc.

7. Any risk assessment/analysis performed on the RB220 roof bolter that is the subject of this lawsuit, on which Plaintiff was injured, by CGM.

Rector testified that CGM did not perform an risk assessment on the RB220 as a "legacy product." He believed the predecessor entity conducted a risk assessment, but had been unable to locate any documents confirming this as a fact. With regard to the RB260, he testified the machine is not in production and, at the present, exists only as a prototype. He deferred to Christophorou for risk assessment information about that model (DN 86-4, p. 43-47). Plaintiffs asked Christophorou whether he was prepared to answer any questions set out in the deposition notice for the time frame predating his joining CGM, to which he responded that he was not (DN 86-5, p. 34).[2] It does not

---

[2] Q.  Have you reviewed these various subjects that are set out here [in the deposition notice]? They list 15 with some subparts on this notice. Have you seen that before?
A.  Yes, I have, sir.
Q.  And have you read over it where you had some familiarity with it?
A.  Yes, yes, I have.
Q.  If I ask you any question relating to Caterpillar Global Mining about these subjects that are listed there, would you be able to provide me any information before you came to work for Caterpillar Global Mining?
A.  No, Sir.
(DN 86-5, p. 34, ln. 5-19).

appear that Plaintiffs pursued questioning Christophorou as to any information he might have post-dating his joining CGM to the present.

    E.   Part 8 of the deposition notice.

> 8. Prior risk assessment and/or evaluations of the Roof Bolters acquired from Bucyrus, which were performed by any entities, including but not limited to those other than CGM, prior to the acquisition of the roof bolting product lines by CGM and/or Caterpillar, Inc. from Bucyrus, and whether or not these risk assessments were reviewed and/or considered before the acquisition of the roof bolting equipment from Bucyrus International;

Rector testified that he believed the prior entity would have performed a risk assessment on the RB220 early in its original design stage; however a search for supporting documentation had been unsuccessful (DN 86-4, p. 48-51).

    Part 9 of the deposition notice.

> 9. Relationship between CGM and Caterpillar Inc., including but not limited to the role Caterpillar Inc. plays in CGM, and the extent of input for business decisions Caterpillar has/had in CGM, relationships between boards of directors of the two entities, identification of any procedures or written documentation which describe the relationship between the two entities;

Rector testified that he had no information responsive to this topic (DN 86-4, p. 51-52). Plaintiffs asked Christophorou whether he was prepared to answer any questions set out in the deposition notice for the time frame predating his joining CGM, to which he responded that he was not (DN 86-5, p. 34). It does not appear that Plaintiffs pursued questioning Christophorou as to any information he might have post-dating his joining CGM to the present.

Part 10 of the deposition notice.

> 10. The extent that Caterpillar Inc.'s risk analysis is used by CGM, including but not limited to sharing of information, meetings, discourse between CGM and Caterpillar, Inc. regarding the purchase of the Bucyrus International roof bolting equipment and product lines from January 1, 2010 to present.

Other that making reference to his earlier testimony that CGM had access to certain Caterpillar, Inc. risk assessment tools; Rector was unable to provide any information relevant to this topic of inquiry (DN 86-4, p. 52-54).  Plaintiffs asked Christophorou whether he was prepared to answer any questions set out in the deposition notice for the time frame predating his joining CGM, to which he responded that he was not (DN 86-5, p. 34).  It does not appear that Plaintiffs pursued questioning Christophorou as to any information he might have post-dating his joining CGM to the present.

F. Part 11 of the deposition notice.

> 11. Role of Caterpillar Inc. with CGM, including decision making, funding, policy implementation, risk analysis, providing equipment, employees, employee scheduling, and acquisition of new equipment and/or product lines by Caterpillar Global Mining.

Rector testified that he had no information responsive to this topic (DN 86-4, p. 54).  Plaintiffs asked Christophorou whether he was prepared to answer any questions set out in the deposition notice for the time frame predating his joining CGM, to which he responded that he was not (DN 86-5, p. 34).  It does not appear that Plaintiffs pursued

questioning Christophorou as to any information he might have post-dating his joining CGM to the present.

G. Part 12 of the deposition notice.

> 12. Alleged comparative fault of Beau Brooks and/or any other entities as to the cause of Beau's injuries which are the subject matter of this lawsuit.

Rector testified that he was not prepared to provide any comments on the topic and deferred to the opinions of CGM's experts (DN 86-4, p. 55-56). Plaintiffs asked Christophorou whether he was prepared to answer any questions set out in the deposition notice for the time frame predating his joining CGM, to which he responded that he was not (DN 86-5, p. 34). It does not appear that Plaintiffs pursued questioning Christophorou as to any information he might have post-dating his joining CGM to the present.

For this particular deposition topic, the undersigned cannot conclude that Rector's deferral to the opinions of CGM's experts was a failure to respond. It is true that a party which intends to assert a defense in litigation must adequately prepare an individual to testify regarding that defense, including the subjective beliefs and opinions of the corporation. In re ClassicStar Mare Lease Litig., 2009 U.S. Dist. LEXIS 41090, *16-17 (E.D. Ky. May 12, 2009) (multiple case numbers omitted from citation). However, a lay witness cannot testify as to legal conclusions, and such questions exceed the permissible scope of a 30(b)(6) deposition. Cardinal Aluminum Co. v. Continental Cas. Co., No. 3:14-CV-857-TBR-LLK, 2015 U.S. Dist. LEXIS 86162, 8 (W.D. Ky. July 1, 2015). Here, in essence, CGM has taken the position that all of the information in its possession

11

relevant to this area of inquiry is set forth in the expert opinions. As such, the expert, and not a Rule 30(b)(6) witness, is the proper deponent on this topic. *See* Sierra Club v. BNSF Ry. Co., No. C13-0967-JCC, 2016 U.S. Dist. LEXIS 116716, *9-11 (W.D. Wash. Aug. 30, 2016). CGM's 30(b)(6) witnesses may not testify as to the legal implications of factual information.

> H. Parts 13 and 14 of the deposition notice.
>
> 13. Description of how CGM complies/complied with American National Standards Institute ("ANSI") B11.0-2010, International Organization for Standardization ("ISO") standards 12100 (2010) and 14121-1 (2007).
>
> 14. Description and explanation of how CGM applies the documents listed in Response Number Four of CGM's Responses to Plaintiff's Third Request for Production of Documents, to risk and hazard assessment for products, equipments, and machines.

Rector deferred to Christophorou for information on these topics (DN 86-4, p. 56-58). Plaintiffs asked Christophorou whether he was prepared to answer any questions set out in the deposition notice for the time frame predating his joining CGM, to which he responded that he was not (DN 86-5, p. 34). It does not appear that Plaintiffs pursued questioning Christophorou as to any information he might have post-dating his joining CGM to the present.

> I. Part 15 of the deposition notice.
>
> 15. Identity and description, (in detail and particularity) of the following documents and tangible items:

A. Any and all documents or other writings, and/or tangible materials in the possession, custody, or control of CGM, or its representatives, which reference or relate to how risk assessments and/or risk evaluations are/were to be done, including, but not limited to policies, procedures, requirements or guidelines that describe when risk analysis should be done, what is to be done for the assessment of risk, and how it is to be documented, as these policies and procedures existed from January 1, 2010 to present.

B. Any and all documents or other writings, and/or tangible materials in the possession, custody, or control of CGM or its representatives which reference or relate to risk assessments and/or hazard analysis on new product lines acquired by CGM or Caterpillar, Inc. from other entities, from January 1, 2010 to present.

C. Any and all documents, notes, written materials, or tangible items, which in any way document or pertain to risk assessments and or hazard analyses performed by CGM or Caterpillar, Inc. on any of the roof bolting equipment and/or product lines acquired from Bucyrus International.

D. Any and all documents, notes, written materials, or tangible items, which document and/or pertain to prior risk assessments and/or evaluations on any of the Roof Bolters and/or roof bolting equipment acquired by CGM and/or Caterpillar Inc., from Bucyrus International, including but not limited to any and all hazard assessments which have been done by any entity at any time on any of the roof bolters and/or roof bolting product lines acquired by CGM or Caterpillar, Inc. from Bucyrus International.

E. Any and all standards or statutes which CGM has relied upon in performing risk assessments and hazard analysis of equipment and machines it has sold from January 1, 2010 to the present.

>F. Any and all documents and/or tangible items, including organizational charts, directives, written guidelines which illustrate the relationship between
>
>CGM and Caterpillar, Inc. as it has existed from January 1, 2010 to present.
>
>G. Any and all notes, reports, and/or tangible items, which document CGM's investigation of Beau Brooks' injuries on the Caterpillar RB 220 Roof Bolter.

In regard to these questions, Rector either was unable to provide the requested information or deferred to Christophorou or others in the company (DN 86-4, p. 58-66). Plaintiffs asked Christophorou whether he was prepared to answer any questions set out in the deposition notice for the time frame predating his joining CGM, to which he responded that he was not (DN 86-5, p. 34). It does not appear that Plaintiffs pursued questioning Christophorou as to any information he might have post-dating his joining CGM to the present.

The transcripts of Rector and Christophorou's depositions reveal two things. First, CGM did not produce witnesses fully prepared to discuss the full extent of topics identified in the notice of deposition. CGM considered the relevant scope of inquiry to be largely limited to roof bolter models RB220 and RB260 and consequently offered witnesses with knowledge limited to that realm of inquiry.

However, the transcripts also reveal that during Christophorou's deposition, specifically with regard to deposition topic 4 and cumulatively for the remaining deposition topics 5 through 15, Plaintiffs asked Christophorou if he was prepared to provide any responses for the time frame predating his joining CGM in 2014. Plaintiffs

did not question Christophorou about his knowledge of matters postdating his joining CGM or as they exist at the present. Items 4, 5 and 9 through 15 requested information up to the present or were otherwise not limited in temporal scope. Consequently, Christophorou might have had at least partially responsive information which Plaintiffs chose not to elicit through further questioning. This is significant since Rector deferred to Christophorou in regard to topics 4, 5 and 13 through 15. Moreover, CGM states that Christophorou was prepared to discuss the documents identified in topics 14 and 15, but Plaintiffs did not ask him any questions about them (DN 86-1, p. 17-18). Plaintiffs appear to recognize this issue, because their response to the motion for a protective order only asks for additional testimony from 30(b)(6) witnesses from January 1, 2010 to May 10, 2013 (DN 93, p. 17-18).

In sum, the witnesses were unprepared to respond to topics 1 through 3. The response to topics 8 and 12 appear adequate. As to topics 4-7 and 9-11 and 13-15, the responses appear deficient as far as Rector is concerned but questionable as far as Christophorou is concerned, given that Plaintiffs couched their inquiry to him in terms of matters predating his joining CGM and did not inquire about his knowledge of matters postdating his employment.

For this reason, CGM failed to prepare and present witnesses regarding information requested in topics 1-7 and information predating 2014 in topics 9-11 and 13. Since Plaintiffs did not question Christophorou on topics related 14 and 15, the undersigned cannot conclude that CGM did not present a witness prepared to discuss those topics and, indeed, CGM states the Christophoru was prepared to answer questions.

      2.   <u>Relevance of unanswered deposition topics.</u>

To the extent that it might be subject to designating additional 30(b)(6) witnesses, CGM moves under Rule 26 for a protective order to prevent questioning on matters that it contends are irrelevant. As this Court recently summarized the standard of relevance:

> Federal Rule of Civil Procedure 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). See also Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment. Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (citation omitted). The movant of a motion to compel discovery bears the burden of demonstrating relevance. See <u>United States ex rel. Gruenbaum v. Werner Enters., Inc.</u>, 270 F.R.D. 298, 302 (S.D. Ohio 2010); <u>Anderson v. Dillard's, Inc.</u>, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008). Based upon the purpose of the Civil Rules, however, that threshold is relatively low. See <u>John Wiley & Sons, Inc. v. Book Dog Books, LLC</u>, 298 F.R.D. 184, 186 (S.D.N.Y. 2014); <u>Wrangen v. Pa. Lumbermans Mut. Ins. Co.</u>, 593 F. Supp. 2d 1273, 1278 (S.D. Fla. 2008). The Court has wide discretion when dealing with discovery matters, such as deciding if information might be relevant. See <u>S.S. v. E. Ky. Univ.</u>, 532 F.3d 445, 451 (6th Cir. 2008); <u>Chrysler Corp. v. Fedders Corp.</u>, 643 F.2d 1229, 1240 (6th Cir. 1981).

<u>Albritton v. CVS Caremark Corp.</u>, No. 5:13-CV-00218-GNS-LLK, 2016 U.S. Dist. LEXIS 83606, *8 (W.D. Ky. June 28, 2016).

CGM opposes further questioning regarding risk assessments for items of equipment other than roof bolters and provides an extensive discussion of the dissimilarity of other types of mining equipment, such as longwall miners and continuous miners, neither of which have an on-board operator. CGM cites <u>Jackson v. E-Z-GO Division of Textron, Inc.</u>, No. 3:12-CV-154-H, 2013 U.S. Dist. LEXIS 94366 (W.D. Ky. July 21, 2015) for the proposition that an incident report about other, dissimilar product

16

models is not relevant to proving a product defect. CGM further cites Brock v. Caterpillar, Inc., 94 F.3d 220 (6th Cir. 1996) for the proposition that the design of one product is not relevant to prove a defect in the design of a dissimilar product.

However, as Plaintiffs point out, it is not their intention to use risk assessments for dissimilar items of equipment as proof of a defective roof bolter design. Plaintiffs seek information about how CGM conducts mining equipment risk assessments and the criteria it employs in conducting those assessments. CGM contends that it did not conduct a risk assessment on the RB220 when it acquired the product as a legacy because it considered it a time proven safe design. CGM believes that a risk assessment was done during the original design stage by a predecessor business entity, but has been unable to locate documents corroborating this belief. Plaintiffs contend that evidence of how CGM conducts risk assessments in general, and the criteria employed in those assessments, will demonstrate that, had an assessment been performed in accordance with those criteria, a dangerous and defective handle design would have been identified.

In a products liability case, "[n]egligence and strict liability theories of recovery overlap to the degree that, in either instance, the plaintiff must prove the product was defective and the legal cause of the injury." Shea v. Bombardier Recreational Products, Inc., No. 2011-CA-000999-MR, 2012 Ky. App. Unpub. LEXIS 746, *9 (Ky. App. Oct. 12, 2012) (citing Tipton v. Michelin Tire Co., 101 F.3d 1145, 1150 (6th Cir. 1996)). *See also* Hinken v. Sears Roebuck and Co., No. 13-283-HRW, 2015 U.S. Dist. LEXIS 4404, *8 (E.D. Ky. Jan. 13, 2015). "The ultimate question is whether the product creates 'such a risk' of an accident of the general nature of the one in question 'that an ordinarily

prudent company engaged in the manufacture' of such a product 'would not have put it on the market.'" Yonts v. Easton Technical Products, Inc., No. 3:11-cv-535-DJH, 2015 U.S. Dist. LEXIS 68224, *14 (W.D. Ky. May 27, 2015) (*quoting* Montgomery Elevator Co. v. McCullough, 676 S.W.2d 776, 780, 782 (Ky.1984)). The undersigned concludes that information about CGM's methodology and practices related to mining equipment risk assessments in general is sufficiently relevant to be discoverable at this juncture in the case.

## Conclusion

**IT IS ORDERED** the motion of CGM is **GRANTED** in part and **DENIED** in part. CGM has provided a sufficient response to deposition notice topics 8 and 12. Plaintiffs failed to question one of the deponents regarding topics 14 and 15 when he was prepared to offer testimony on those topics and, therefore, waived further questioning. CGM was deficient in regard to the remaining topics and Plaintiffs are entitled to additional designation of witnesses who can provide information for the time frame January 1, 2010 to May 10, 2013.

ENTERED this

Copies to: Counsel of Record