CIVIL ACTION NO. 4:14CV-00022-JHM

BEAU BROOKS and TINA BROOKS                                      PLAINTIFFS

V.

CATERPILLAR GLOBAL MINING AMERICA, LLC                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on motions in limine by Defendant, Caterpillar Global Mining America, LLC, to preclude the introduction of certain evidence at trial [DN 115, DN 116]. Fully briefed, these matters are ripe for decision.

## I. BACKGROUND

This is a product-liability case against Defendant, Caterpillar Global Mining America, LLC ("CGM"), arising out of an accident that happened in May of 2013. Plaintiff, Beau Brooks, a Western Kentucky coal miner, sustained injuries to his left hand when his hand was crushed between a rib of coal and a Caterpillar RB220 Roof Bolter. Plaintiffs allege that the injury occurred because Brooks was holding onto the operator handle of the roof bolter that extended his hand beyond the roof and outside the protective operator compartment. Plaintiffs contend that the crush injuries would not have occurred if CGM's operator handle had not been located so close to the edge of the roof bolter's operator compartment that Brooks left hand was left unprotected. Brooks and his wife sued CGM.

## II. DISCUSSION

### A. Motion In Limine [DN 115]

### 1. Disclosure of Witnesses

Defendant requests the Court to require each party to provide to the other parties the names and expected sequence of those witnesses that the party intends to call at trial no later than one full business day in advance. Plaintiffs object arguing that it would hamper the parties' strategical decisions regarding the sequence and timing of witnesses.

This motion in limine is **GRANTED**. Disclosure of expected witnesses in advance of their testimony at trial will aid in the orderly progress of the trial. Disclosure shall be made on or before 5:00 p.m. the day before the testimony is expected.

### 2. Medical Bills

Defendant requests that Plaintiffs' recovery for past medical services, if any, be limited, post-trial, to those amounts accepted as full and final payment by the various healthcare providers and that Plaintiffs be required to plead and prove those amounts at trial.

Plaintiffs object to this motion arguing that the introduction of charged-off medical expenses for any reasons, including workers' compensation and/or health insurance, are not admissible at trial. Similarly, Plaintiffs argue that the reduction of the award of medical expenses for these write-offs is improper. For the reasons set forth in the Memorandum Opinion addressing Plaintiffs' motion to preclude the entry of collateral source evidence [DN 122], the motion in limine is **DENIED**.

### 3. Sequestration of Witnesses

Defendant seeks the sequestration of all lay witnesses pursuant to Fed. R. Evid. 615 so that they cannot learn of the testimony of other witnesses. Plaintiffs do not object to this motion in limine except to the extent that the Defendant's seek to exclude witnesses that are parties. Fed. R. Evid. 615 excepts parties from being sequestered from the trial proceedings.

Accordingly, this motion is **GRANTED**.

### 4. Financial Condition of Defendant

Defendant moves the Court to exclude evidence and argument on its wealth or financial condition. Specifically, Defendant moves to preclude Plaintiffs from offering: (1) evidence of or referring to Defendant's financial condition or net worth; (2) offering evidence of or referring to the Defendant's gross revenues, profits, or other evidence of economic activity outside Kentucky; and (3) asking the jury to "send a message" or to act as "the conscience of the community" or engage in other similar appeals to economic or sectional biases and prejudices, or other improper factors that go beyond applying the law to the facts of this case.

Plaintiffs object arguing that the financial condition of parties can be admissible to show a party's motive for its actions and where a party opens the door to such evidence. Plaintiffs maintain that two pieces of evidence should be admitted. First, the press release indicating that Caterpillar, Inc. purchased Bucyrus for 8.8 billion dollars should be introduced so the jury knows the background and history of the subject machine. According to Plaintiffs, this press release evidences the acquisition of the equipment, including the subject roof bolter. Second, Plaintiffs contend that the general revenue reports from Defendant and its parent company which reveal the profits both earned since Beau Brooks was injured. Plaintiffs maintain that these reports should be admitted to show that CGM had sufficient resources to conduct risk assessments and make the appropriate modifications to the machines.

Pursuant to longstanding Kentucky law, evidence of CGM's financial condition or net worth is inadmissible. As noted by the Kentucky Supreme Court, "the parties may not present evidence or otherwise advise the jury of the financial condition of either side of the litigation." Hardaway Mgmt. Co. v. Southerland, 977 S.W.2d 910, 916 (Ky. 1998). Evidence of the

financial information "creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences." <u>Sand Hill Energy, Inc. v. Smith</u>, 142 S.W.3d 153, 167 (Ky. 2004). Moreover, CGM's financial condition is irrelevant to this action. Fed. R. Evid. 401. <u>See Parrish v. Dollar General Corporation</u>, 2016 WL 742925 (W.D. Ky. Feb. 24, 2016). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. In the present case, CGM's financial condition and the purchase price of Bucyrus are not relevant to the design defect case. CGM has not put forth the argument that it was not financially viable for the company to move the handhold or that the company chose not to conduct a new product risk assessment because of the lack of financial resources. Ultimately, evidence regarding the overall financial condition or net worth of Defendant is not admissible. The motion in limine is **GRANTED**.

### 5. Unrelated Litigation

Defendant moves the Court to preclude Plaintiffs from making references to unrelated litigation at the trial of this matter. In response, Plaintiffs indicate that they do not plan to make reference to unrelated litigation and do not object to the motion limine. Accordingly, the motion is **GRANTED**.

### 6. Golden Rule

Defendant moves to preclude the Plaintiffs from suggesting or asking jurors to place themselves in the position of Plaintiffs (the "Golden Rule"). Plaintiffs do not object to the motion in limine. Therefore, the motion is **GRANTED**.

### 7. Preclude Voir Dire Regarding Particular Verdict Amount

Defendant moves to preclude Plaintiffs from engaging in any inquiry calculated to have

jurors indicate that they would award a particular verdict amount based upon facts similar to the case at bar. Defendant also seeks to prohibit counsel from inquiring as to whether a juror "has a problem with" awarding the same or similar verdict amount at any time during voir dire and continuing through closing argument. Defendant contends that such inquiries are improper because they commit jurors to a particular verdict amount without hearing any of the evidence of damages. Defendant argues that the proper inquiry is whether jurors have the ability to consider all evidence with respect to damages and whether they have the ability to award a sum of money which is fair and reasonable under the circumstances.

In response, Plaintiffs indicate that they do not intend to inquire or to suggest to potential jurors during voir dire a particular amount of money to award in this case. Accordingly, the motion in limine as it relates to this issue is **GRANTED**. Furthermore, Plaintiffs are precluded from eliciting promises or pledges from potential jurors to return a specific verdict.

However, Plaintiffs argue that they should be able to explore whether jurors are willing to award money if they believe a party should be compensated. Plaintiffs contend that they should know if a potential juror is uncomfortable awarding sums of money or does not believe in awarding large sums of money. Plaintiffs tender two examples of voir dire questions that they argue should be explored with the jury to enable them to exercise their peremptory challenges. Questions such as:

> A. This case is a civil case, and in civil cases the only remedy the law provides is monetary compensation. In a criminal case, the law provides the remedy of jail, but in a civil case, there is no jail . . . only money. How do you feel about the idea that civil lawsuits allow for the recovery of money damages?
> B. After you hear the evidence if you believe, under the law, defendant is liable for Beau's injuries, and if the evidence establishes that his injuries are serious enough to warrant compensating Beau with large sums of money, like hundreds of thousands of dollars or millions of dollars is there anybody that

> cannot award large sums of money; and who would have a problem awarding hundreds of thousands of dollars or millions of dollars and why?

(Plaintiffs' Response at 6.)

The Court finds it appropriate to pursue the topic regarding the jurors' thoughts on awarding large amounts of damages, as long as the statements are supported by evidence. Ribeiro v. Baby Trend, Inc., 2017 WL 1393088, at *8 (D. Neb. Apr. 17, 2017). In the present case, Plaintiffs' economic expert is expected to testify that Plaintiff has incurred over 2.6 to 3.1 million dollars in lost wages and benefits alone. Thus, general questioning regarding damages is appropriate to determine if the jury is willing to consider awarding the amount of damages Plaintiff is seeking. The Court intends to question the jury regarding damages which will avoid any potentially improper inquiry by the parties on this issue. The motion in limine is **DENIED IN PART.**

### 8. Disclosure of Pretrial Motions

Defendant moves to preclude Plaintiffs from disclosing that these or other motions have been filed or ruled upon, or that Defendant has moved to prohibit proof or that the Court has excluded proof on any matter. Plaintiffs do not object to this motion as long as the order is reciprocal. Accordingly, the motion is **GRANTED**. The parties shall refrain from referring to the filing of pretrial motions or prior motions in limine to the jury.

### 9. Reference to Untimely Filed Claims or Causes of Action

Defendant moves to preclude Plaintiffs from referencing claims or causes of action "not supported by timely filed trial pleadings." Plaintiffs object indicating that the request is vague and does not reference any specific claims or causes of action. This motion is **DENIED** at this time. Any objections regarding this issue are better handled at trial upon proper objection by

Defendant.

### 10. Reference to Failure or Decision to Call or Not to Call a Witness

Defendant moves to preclude Plaintiffs from making any reference to the failure or decision to call, or not to call, any witness during the trial. In response, Plaintiffs object arguing that while they do not plan to reference this fact, they reserve the right to do so if warranted. "It is impermissible to draw any inference from a party's failure to call witnesses that were equally available to both sides." Walker ex rel. his Court Appointed Curator v. United Healthcare of Hardin, Inc., 2010 WL 3092648, *8 (W.D. Ky. Aug. 6, 2010)(citing United States v. Virgen–Moreno, 265 F.3d 276, 291 (6th Cir. 2001); Elam v. Menzies, 594 F.3d 463, 469 (6th Cir. 2010)). See also Von Wiegen v. Shelter Mut. Ins. Co., 2013 WL 6632020, *3 (E.D. Ky. Dec. 17, 2013). The Court finds that this issue is better addressed at trial. Counsel should approach the bench before commenting on the failure of opposing counsel to call a witness.

### 11. Requesting Stipulation in Presence of Jury

Defendant moves the Court to preclude Plaintiffs from making any attempt in the presence of the jury to seek or request Defendant's attorneys to produce documents, to stipulate to any fact, or to make any agreement. Plaintiffs do not object to this motion as long as the order is reciprocal. Accordingly, the motion is **GRANTED**. The parties should refrain from requesting opposing counsel in the presence of the jury to stipulate to an item, make an agreement, or produce documents.

### 12. Directing Any Question to Counsel in Presence of Jury

Defendant moves the Court to preclude Plaintiffs from directing any question to counsel in the presence of the jury. Plaintiffs do not object to this motion as long as the order is reciprocal. Accordingly, the motion is **GRANTED**. The parties should refrain from directing

any question to opposing counsel in the presence of the jury.

**13. Exhibits**

Defendant moves the Court to preclude Plaintiffs from presenting, showing, exhibiting, publishing, or otherwise placing in such position so as to make visible to a juror or prospective juror any exhibits before they are first properly admitted into evidence and tendered to the Court and opposing counsel outside of the jury's presence.

Generally, the Plaintiffs do not appear to object to this motion with the exception of the demonstrative evidence and exhibits Plaintiffs intend to utilize in opening argument. Plaintiffs respond that they have listed all the exhibits they will present at trial, including demonstrative evidence and exhibits. Plaintiffs indicate they plan to present proper demonstrative visual aids and exhibits to the jury during opening statement. According to Plaintiffs, if the visual aids and demonstrative exhibits are based on evidence which will be proved at trial, there is no reason these items cannot be utilized in opening.

The motion in limine is **GRANTED IN PART**. The scheduling order entered by the Court in this action is designed to provide the parties with ample opportunity to object to the proposed exhibits tendered by opposing counsel. In fact, the scheduling order in the present case provides that any objections to an exhibit list must be filed on or before October 9, 2017. These objections enable the Court to rule in advance on the exhibits. Therefore, the parties may utilize demonstrative evidence and exhibits in their opening arguments to the extent that those items have been properly tendered to opposing counsel and the Court has not sustained an objection to the admissibility of those items or held in abeyance a decision with respect to the admissibility of those items. See Chopourian v. Catholic Healthcare West, 2011 WL 6396500, at *7 (E.D. Cal. Dec. 20, 2011); Sadler v. Advanced Bionics, LLC, 2013 WL 1340350, *3 (W.D. Ky. April 1,

2013).  Furthermore, as noted by the scheduling order, if no objections are filed as to an exhibit, the parties will be deemed to have waived any objection to its use at trial.

### 14. **Hearsay**

Defendant moves the Court to preclude Plaintiffs from making any attempt to testify about what a witness heard or was allegedly told by a non-party pursuant to Fed. R. Evid. 801. Plaintiffs do not object to the motion in limine with the exception of impeachment evidence as long as the order is reciprocal.   Thus, the motion is **GRANTED**.  The parties shall adhere to the Federal Rules of Evidence as it relates to hearsay and impeachment.

### 15. **Liability Insurance**

Defendant moves the Court to preclude the Plaintiffs from introducing any evidence regarding liability insurance coverage.  The Plaintiffs do not oppose Defendant's motion with respect to this issue. As such, it is **GRANTED**.

### 16. **Amount Spent to Defend Lawsuit**

Defendant moves to preclude Plaintiffs from making any reference to the amount Defendant may have spent to defend this lawsuit.  Plaintiffs do not oppose this motion as long as the order is reciprocal and the order does not preclude Plaintiffs' right to question Defendant's experts regarding the amount paid by Defendant for their expert work.  Accordingly, the motion is **GRANTED**.  The parties are precluded from making reference to the amount the opposing party spent to litigate this action.  The parties are permitted to question the experts regarding their compensation.

### 17. **Other Pleadings or Discovery by Defendant from Other Sources**

Defendant moves to preclude Plaintiffs from making any reference to or offering any evidence relating to any pleadings or discovery by Defendant from any source other than the

subject lawsuit.  In response, Plaintiffs indicate that they do not intend to offer evidence from pleadings or discovery the Defendant has filed in other cases.  However, without more specificity Plaintiffs object to the broad entry of Defendant's motion in limine.  Given Plaintiffs' response, the motion in limine is **DENIED** with leave to refile.   Plaintiffs have tendered their exhibit lists and will tender an updated one at a later date.  If Defendant objects to one of those exhibits, it shall file a proper motion at that time.

### 18.  Prior Action and/or Omission on part of Defendant

Defendant moves to preclude Plaintiffs from mentioning, referencing, or introducing evidence of any prior action and/or omission on the part of Defendant that is "not directly related to the incident or allegations at issue in this case or that does not involve the same or similar products involved in this case."  (Defendant's Motion at 5.)  In response, the Plaintiffs indicate that they do not object to this motion to the extent that Defendant moves the Court to preclude Plaintiffs from referencing Defendant's prior actions and/or omissions which have "no relationship to this lawsuit."  Plaintiffs do object in as much as Defendant seeks to exclude any action or omissions that indirectly relate to this lawsuit.

Based on the lack of specificity of the motion in limine, the Court is unable to determine what evidence Defendant seeks to exclude.  Accordingly, any objections related to this issue are better handled at trial upon proper objection by Defendant.

### 19.  Patents, Studies, or Similar Works

Defendant moves the Court to preclude Plaintiffs from introducing any patents, studies, or similar works unless a proper evidentiary foundation for their admissibility has been laid. Defendant further argues that while experts may reference these items in their testimony pursuant to Fed. R. Evid. 703, these items may not be admitted into evidence for the jury's

consideration.

In response, Plaintiffs indicate that they will authenticate any patents, studies, or technical drawings they will introduce. Plaintiffs object to Defendant's request to preclude such exhibits from being entered into evidence for the jury to consider. According to Plaintiffs, they will present certain technical drawings of the subject machine, drawings of the placement of the operator's handle, and drawings which show where the handle should have been located.

Defendant's motion is **GRANTED IN PART AND DENIED IN PART**. The introduction of any patents, studies, or technical drawings must be subject to the proper evidentiary foundation. However, technical drawings of the roof bolter, drawings of the placement of the operator's handle, and drawings which show where the Plaintiffs' believe the handle should have been located are properly introduced as an exhibit in this matter. Defendant offers no case law that precludes such evidence regarding a product involved in a design defect case.

### 20. Depositions

Defendant moves to preclude Plaintiffs from playing or reading any deposition to the jury without advising Defendant 24 hours in advance of the pages and line numbers. Plaintiffs object. This motion in limine is **GRANTED IN PART**. As discussed above, the parties' disclosure of expected witnesses, including those presented by virtue of deposition testimony, in advance of their testimony at trial will aid in the orderly progress of the trial. Disclosure shall be made as noted in paragraph 1 of this section.

### 21. Allocation of Damages

Defendant moves to preclude Plaintiffs from arguing for allocation of damages based upon criteria other than compensatory damages. Defendant maintains that Plaintiffs may

improperly attempt to argue that the jury should consider Defendant's profits in awarding damages. Defendant argues that such argument would be irrelevant since Plaintiffs have alleged and can only pursue claims for compensatory damages. Plaintiffs respond that they are seeking compensatory damages and not punitive damages in this case. However, they object to the motion arguing that the motion lacks specificity.

As noted in section 4, in as much as Defendant seeks to preclude evidence of its financial condition and profits, the motion in limine is **GRANTED**. "[T]he parties may not present evidence or otherwise advise the jury of the financial condition of either side of the litigation." Hardaway, 977 S.W.2d at 916. See also Parrish v. Dollar General Corp., 2016 WL 742925 (W.D. Ky. Feb. 24, 2016).

### 22. Comments Regarding Defense Attorneys

Defendant moves to preclude Plaintiffs from making any comment, reference, or argument regarding attorneys representing Defendant in this litigation, the home location of its attorneys, the size of their law firms, or the resources available to those firms. Defendant argues that it would be unfairly prejudiced under the same rationale that applies to prohibitions on evidence of a defendant's financial condition.

In response, Plaintiffs state that they will not reference the size of Defendant's law firms, hourly billing fees, or reputation of defense law firms at trial. However, Plaintiffs respond that they reserve the right during voir dire to question or request the Court to question the jury panel about the jurors' potential knowledge of an attorney at the defense law firms representing Defendant in this case to ensure the jurors will be impartial.

Defendant's motion is **GRANTED IN PART**. The Court will introduce the attorneys, their law firms, and the location of the law firms in voir dire to determine whether the jurors

personally know the attorneys or other members of the firm.

**23. Reference to Settlement, Resolution, or Trial of Other Caterpillar Litigation**

Defendant moves to preclude any reference to, evidence of, or comment regarding settlement, resolution, or trial of any other litigation involving Defendant. The Plaintiffs do not oppose Defendant's motion with respect to this issue. As such, it is **GRANTED**.

**24. Reference of Plaintiffs' Religious Beliefs or Habits**

Defendant moves to preclude any reference or evidence of Plaintiffs' religious beliefs or habits. Fed. R. Evid. 610 provides that "[e]vidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility." Plaintiffs indicate that they do not intend to offer religious evidence for purposes of credibility of any witnesses. As such, the motion with respect to utilization of a witness's religious beliefs to attack or support the witness's credibility is **GRANTED**.

However, in response to the motion, Plaintiffs note that they reserve the right to reference religion in regard to activities that the Brooks family may be involved in with their church and/or if any types of religious activities have been affected by Beau Brooks' injury. Fed. R. Evid. 610 is inapplicable where evidence of a witness's religious beliefs, including participation in church or religious activities, is offered for some purpose other than character for truthfulness or untruthfulness. In the present case, the Plaintiffs may properly testify regarding his church activities to illustrate hardships imposed on Beau Brooks by his physical condition in his efforts to attend church or participate in other religious activities. See Mauldin v. Upjohn Co., 697 F.2d 644, 649 (5th Cir. 1983)(products liability action); 28 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6153 (2008). In as much as Defendant's seek to exclude this type of evidence, the motion in limine is **DENIED**.

### 25. Reference to Anticipated Defenses

Defendant moves to preclude any reference to or evidence regarding anticipated defenses in their case-in-chief before the Defendant introduces the defenses. Defendant argues that this evidence is irrelevant and possesses the potential for prejudice and confusion pursuant to Fed. R. Evid. 403. Defendant offers no authority for this motion.

Plaintiffs object to this motion. Plaintiffs note that the case has been ongoing for over three years, and after taking the depositions of Defendant's experts and several employees, the defenses being raised by Defendant are clear. Specifically, CGM contends that Plaintiff should not have even been holding the handle when the incident occurred. Defendant claims the handle was only for ingress and egress for the machine. CGM also claims that it would not be feasible to have relocated the handle further inboard on the roof bolter. Finally, CGM's vocational expert testified that Beau Brooks has no occupational disability. Plaintiffs contend that evidence addressing the anticipated defenses is relevant pursuant to Fed. R. Evid. 401, and the rule permits the parties to offer evidence of both claims and defenses.

This motion in limine is **DENIED**. Under Federal Rule of Evidence 611(a), a district court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence with the goal that the presentation be effective for ascertaining the truth and avoid wasting time. Federal courts have repeatedly held that in a criminal case, the government may offer evidence in its case-in-chief in anticipation of an expected defense. See, e.g., United States v. Curtin, 489 F.3d 935, 940 (9th Cir. 2007); United States v. Aranda, 963 F.2d 211, 215 (8th Cir. 1992)("the government may anticipate the defense and introduce it in its case-in-chief"; United States v. Evans, 697 F.2d 240, 248 n. 8 (8th Cir. 1983) (noting that it was not error for the court to admit evidence in its case-in-chief to rebut an anticipated defense); Rooks v. United

States, 2014 WL 949100, at *7 (E.D. Va. Mar. 11, 2014). The Court has located no authority suggesting that such holding does not likewise apply to civil cases. In fact, while holding that a plaintiff has no duty to anticipate or to negate a defense theory in his case-in-chief, the Sixth Circuit recognized that a defense theory might in fact be offered in a plaintiff's case-in-chief. Benedict v. United States, 822 F.2d 1426, 1428 (6th Cir. 1987); Toth v. Grand Trunk R.R., 306 F.3d 335 (6th Cir. 2002)(plaintiff has no duty to anticipate or to negate a defense theory in plaintiff's case-in-chief; notably, Sixth Circuit doesn't preclude doing so); see also THK America, Inc. v. NSK, Ltd., 917 F. Supp. 563 (N.D. Ill. 1996)(rejecting argument that plaintiff is precluded from anticipating defenses in patent case and presenting them in case-in-chief).

**26. Send a Message Argument**

Defendant moves to preclude Plaintiffs from suggesting or asking the jurors to "send a message," "teach a lesson," or otherwise "punish" CGM for the allegedly defective design of the roof bolter. Defendant contends that such an argument is inherently prejudicial because on its face the argument urges the jury to render its verdict based on passion and prejudice. Brewer v. Commonwealth, 206 S.W.3d 343, 350-51 (Ky. 2006); Clements Bros. Co. v. Everett, 414 S.W.2d 576, 578 (Ky. 1967). Defendant argues that because Plaintiffs have not asserted a punitive damage claim, any such argument along the lines of "send a message" would be improper and prejudicial.

Plaintiffs respond that it will not reference "send a message" arguments to request additional sums of money beyond the compensatory damages Plaintiffs are requesting. However, Plaintiffs argue that it should not be limited from requesting that the jury stop certain types of behavior or prevent negative consequence in the future by finding in favor of the Plaintiffs. Plaintiffs contend that these types of arguments are admissible if not focused on

requesting additional sums.

The Court disagrees with Plaintiffs. "Send a message" or conscience of the community arguments are disfavored in the Sixth Circuit. <u>Strickland v. Owens Corning</u>, 142 F.3d 353, 358-359 (6th Cir. 1998) (Such arguments "'can have no appeal other than to prejudice'" and amount to an "'improper distraction from the jury's sworn duty to reach a fair, honest and just verdict.'" <u>Id</u>. (quoting <u>Westbrook v. General Tire and Rubber Co.</u>, 754 F.2d 1233, 1238 (5th Cir. 1985)); <u>Calaway ex rel. Calaway v. Schucker</u>, 2013 WL 311441, at *3 (W.D. Tenn. Jan. 25, 2013). In fact, case law reflects that a "district judge may order a new trial based on the submission of 'conscience of the community' remarks if he or she believes the remarks infected the jury's deliberations and conclusions." <u>Faulstick v. Southern Tire Mart, LLC</u>, 2014 WL 4055571, *3 (S.D. Miss. Aug. 14, 2014). <u>See also</u> <u>Bunch v. Pacific Cycle, Inc.</u>, 2015 WL 11622952, at *2 (N.D. Ga. Apr. 27, 2015).

Moreover, Plaintiffs' reliance on <u>Ventas Inc. v. HCP, Inc.</u>, 2009 WL 3855638 (W.D. Ky. Nov. 17, 2009), in support of their position is misplaced. In <u>Ventas</u>, the Court noted that the "send the message" argument was "likely improper," but concluded that the "send the message" argument in that case did not warrant a new trial. Just as the district court in <u>Faulstick</u>, this Court "is not inclined to entertain post-trial motions resulting from the submission of improper 'conscience of the community' or 'send a message' pleas to the jury." <u>Faulstick</u>, 2014 WL 4055571, *3. Accordingly, the motion in limine is **GRANTED**. Counsel is precluded from requesting that the jury "send a message" or act as the "conscience of the community."

### 27. Reptile Theory

Defendant requests the Court preclude Plaintiffs' counsel from attempting to present "Reptile Theory" evidence or argument at trial. Defendant maintains that it is not proper for

Plaintiffs' counsel to argue that "a company is not allowed to needlessly endanger the public." Plaintiffs respond that they will not reference the "Reptile Theory" at trial. However, Plaintiffs object to the motion arguing that they should be able to argue that (1) coal miners operating machines in coal mines should be protected and (2) the public operating Caterpillar machines should be protected.

The "Reptile Theory" "appears to be in use by the plaintiffs' bar in some states as a way of showing the jury that the defendant's conduct represents a danger to the survival of the jurors and their families. The Reptile Theory encourages plaintiffs to appeal to the passion, prejudice, and sentiment of the jury." Hensley v. Methodist Healthcare Hospitals., 2015 WL 5076982, *4 (W.D. Tenn. Aug. 27, 2015); Randolph v. QuikTrip Corp., 2017 WL 2214932, at *4 (D. Kan. May 18, 2017)(Utilization of the "Reptile Theory" encourages jurors to decide a lawsuit "based upon fear, generated by plaintiff's counsel, that a verdict in favor of the defendant will harm the safety of the community, and, thus, the juror.")

The motion in limine is **GRANTED.** Reptile Theory arguments appear to mirror the "send the message" or conscience of the community arguments discussed previously. As noted above, "send a message" or conscience of the community arguments are disfavored in the Sixth Circuit. Strickland v. Owens Corning, 142 F.3d 353, 358 (6th Cir. 1998). Similarly, any argument by Plaintiffs' counsel that attempts to urge the jury to render a verdict against Defendant on the basis of fear for the safety of the community or fear for the safety of the jury and their families is inappropriate. Accordingly, Plaintiffs may not properly argue that the lawsuit was brought to ensure or promote community safety.

The Court does not interpret Defendant's motion in limine as seeking to exclude testimony from Plaintiffs' counsel or witnesses that the product was not safe for use by the coal

miners. The ultimate question for the jury in this matter is whether the location of the operator handle on the Caterpillar RB220 Roof Bolter rendered it a defective and unreasonably dangerous piece of equipment. As a result, whether the product was safe for use by coal miners in the performance of their job is relevant to this question. Thus, it is entirely appropriate for Plaintiffs' counsel to contend at trial that the product was not safe.

### 28. Expert Witnesses

Defendant moves the Court to preclude the jury from being informed that a witness is an expert. United States v. Johnson, 488 F.3d 690, 697 (6th Cir. 2007). Defendant argues that if the jury is improperly informed that a witness is an expert, it could unfairly enhance the credibility of that witness in the jury's eyes and thus introduce unfair prejudice into the litigation.

Plaintiffs object arguing that if the Court qualifies a witness as an expert in a civil trial, the Court should be able to identify the witness as an expert and the parties can refer to the witness as an expert. Plaintiffs note that the case relied upon by Defendant is a criminal case. The Sixth Circuit in Johnson was concerned about the juror believing the district court gave enhanced credibility to the police officer by declaring him an expert in a certain area in front of the jury. Here, Plaintiffs contend that the jury will not be faced with this problem if both parties' expert witnesses are referred to as experts.

This motion in limine is **DENIED**. Initially, the Court does not intend to declare that a witness is qualified as an expert or qualified to render an expert opinion in front of the jury. The qualifications of the parties' experts and admissibility of their opinions have been addressed by the Court in response to the parties' Daubert motions. Furthermore, the Court will instruct the jury on the proper consideration of expert witness testimony. Finally, the Court does find any authority to prohibit counsel from referring to the expert witnesses as expert witnesses.

**29.  Inadmissible Evidence**

Defendant moves to exclude from evidence all matters rendered inadmissible under the Federal Rules of Evidence, including some or all of Plaintiffs' proffered expert testimony. Plaintiffs respond that if the Court declares a matter inadmissible, then the evidence will be excluded at trial with the opportunity of either party to offer an avowal evidence.

Defendant fails to identify the specific evidence to which it objects.  The Court has made numerous evidentiary rulings in this matter, and the Court expects the parties to abide by those rulings.  Any other objections regarding evidentiary matters should be made at trial.

**30.  Reference to Victims**

Defendant moves to exclude any reference to or evidence, testimony, or argument referring to "victims."  Defendant argues that referring to Plaintiffs as victims incorrectly implies the existence of a criminal legal proceeding and serves to improperly inflame certain jurors and to violate their oath not to let bias, sympathy, or prejudice play any part in their deliberation. Plaintiffs object to this motion.  Plaintiffs represent that they do not plan to solely refer to Beau Brooks as a victim. However, Plaintiffs contend that Defendant offers no authority to preclude counsel from referring to Plaintiff as a victim of negligent design.

The motion in limine is **DENIED**.   As noted by the court in Riley v. Ford Motor Co., "the term "victim"—when afforded its plain meaning—does not necessarily imply criminal wrongdoing.  Plaintiffs claim that they were victims of Defendants' negligence, and Plaintiffs' counsel should be free to present Plaintiffs' case in that light. . . . Nonetheless, the Court advises all counsel of record that it will not allow grandstanding, theatrics, and gamesmanship in the courtroom." Riley v. Ford Motor Co., 2011 WL 3273592, *2 (S.D. Miss. July 29, 2011).  See also Hankins v. Ford Motor Co., 2012 WL 174793, at *9 (S.D. Miss. Jan. 20, 2012); Murphy v.

<u>Ford Motor Co., Inc.</u>, 2009 WL 2998960, *6 (W.D. La. Sept. 14, 2009).  This reasoning is persuasive.

### 31.  Questions of Ethical or Moral Obligations

Defendant moves the Court to exclude any reference, testimony, or argument concerning questions of ethical or moral obligation.  The Plaintiffs do not oppose Defendant's motion with respect to this issue. As such, it is **GRANTED**.

## B.  Motion in Limine [DN 116]

### 1.  Purported Bucyrus "You Tube" Video

Defendant moves the Court to exclude the "Bucyrus YouTube Video Illustrating Operator Holding Onto Operator's Handle While Tramming Similar Roof Bolter."  The YouTube site indicates it was uploaded by CGM in June of 2011, and the video states that it was made by Bucyrus International as an advertisement for its roof bolting product lines.  A portion of the video shows the same type of roof bolter which is subject to this lawsuit and the operator is holding on to the same type of handle while operating the machine.  (See https://www.youtube.com/watch?v=JdKCaoroD1Y.)

First, Defendant argues that the video is unauthenticated hearsay.  Defendant asserts that it did not produce the video and cannot be certain who did.  Defendant maintains that Plaintiffs have not identified any witness who is competent to authenticate the video.

Plaintiffs note that they can properly authenticate the video pursuant to Fed. R. Evid. 901(4) through identification of "substance, internal patterns, or other distinctive characteristics of the item."  According to Plaintiffs, internet publications with distinct characteristics, such as dates of publication, identity of publication, and website addresses, provide sufficient evidence, without the testimony of persons with knowledge to establish that internet evidence is what it is.

<u>Premier Nutrition Inc. v. Organic Food Bar, Inc.</u>, 2008 WL 1913163 (C.D. Cal. March 27, 2008).

Plaintiffs contend that the evidence reflects that the video was uploaded to YouTube from the Caterpillar website and the narrator specifically identifies the roof bolter as the RB-2 which was the name of the roof bolter manufactured by Bucyrus and acquired by Caterpillar and CGM. Plaintiffs note that Beau Brooks and Plaintiffs' experts Thomas Boutaugh and Jack Spadaro will identify the roof bolter in the video as a roof bolter substantially similar to the roof bolter Beau operated when he was injured.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Evidence may be authenticated by its "appearance, contents, substance, internal patterns, or other distinctive characteristics . . . taken together with all the circumstances." Fed. R. Evid. 901(b)(4). Authentication may be established "solely through the use of circumstantial evidence." <u>United States v. Smith</u>, 918 F.2d 1501, 1510 (11th Cir. 1990). Once such a showing has been made, "the evidence is admitted," and the ultimate question of its reliability is reserved for the fact finder. <u>United States v. Belfast</u>, 611 F.3d 783, 819 (11th Cir. 2010). Thus, the question before the Court is whether there is any competent evidence to support the Plaintiffs contention that the YouTube video is what Plaintiffs purports it to be – an advertising video from Bucyrus International that shows a roof bolter operator holding on to the handle while tramming. Given the Plaintiffs' representation, the Court finds that the video can be properly authenticated at trial. <u>See</u> <u>United States v. Broomfield</u>, 591 Fed. Appx. 847, 851-852 (11th Cir. 2014); <u>Carucel Investments, L.P. v. Novatel Wireless, Inc.</u>, 2017 WL 1215838 (S.D. Cal. April 4, 2017).

Second, Defendant argues that the video is irrelevant pursuant to Fed. R. Evid. 401.

Defendant maintains that the two seconds of footage depicting an operator apparently grasping the hand hold establishes nothing more than that the particular operator in this video at this particular moment and in this particular setting is grasping the hand hold. Defendant maintains that the video is at most a promotional piece for the roof bolter. It is not a training video, and it does not set forth any rules or recommendations for how properly to operate the machine. Defendant also argues that the video does not impeach anything. Defendant's witnesses have testified that the intended primary purpose of the hand hold is to facilitate ingress and egress from the machine. But, according to Defendant, at the same time, it has never suggested that operators do not ever grasp the handhold at any other time. Defendant maintains that the video does not establish or make more probable Plaintiffs' theory about the hand hold's primary purpose or how it "must" be used; nor does it make less probable Defendant's position that the primary purpose of the hand hold is to facilitate ingress and egress from the machine.

The Court finds that the video is relevant to the issues in the present case. The use of and location of the operator's handle is a significant issue in this case. Defendant's experts have taken the position that the roof bolter's operator handle was designed only for the operator to enter and exit the machine. (Wand Dep. at 16, DN 52-02; Bell Dep. at 69, DN 52-03.) Additionally, James Bell with CGM testified that most people don't use the operator handle for any other purpose. The video uploaded by CGM and made by Bucyrus shows a coal miner operating the roof bolter holding onto the operator handle, which contradicts CGM's experts. Additionally, as correctly noted by Plaintiffs, the video supports Plaintiffs' position that the coal miners hold onto the handle while operating the machine.

Furthermore, the Court finds that the probative value of the evidence outweighs any potential prejudice. While defense counsel may properly bring out the argument that the video is

an advertisement video and not a training video, the purpose of the video does not warrant exclusion under Fed. R. Evid. 403.

Accordingly, the motion in limine is **DENIED**.

### 2. Armstrong Incident Injury Report and Kentucky MSHA Investigative Report

Defendant moves to preclude the introduction of the Armstrong Incident Injury Report and the Kentucky Office of Mine Safety and Licensing ("KOSML") Initial Investigative Report. Defendant maintains that the reports contain "hearsay within hearsay" pursuant to Fed. R. Evid. 805 and fail to satisfy the public record hearsay exception of Fed. R. Evid. 803(8). Plaintiffs object to the motion to exclude arguing that both the Armstrong Incident Injury Report and the KOMSL Report fall within the business record exception of Fed. R. Evid. 803(6).

Plaintiffs represent that they intend to use the reports to either refresh the memories of witnesses or impeach the witnesses. Under either application, the reports would not be admitted as an exhibit into evidence but rather reviewed by the witness or referenced by counsel. See Rush v. Illinois Cent. R. Co., 399 F.3d 705, 717-718 (6th Cir. 2005); Fed. R. Evid. 612; Fed. R. Evid. 613. Accordingly, because the Plaintiffs do not seek to introduce these exhibits into evidence, the Court does not have to determine whether the reports fall within one of the hearsay exceptions under Fed. R. Evid. 803.

Furthermore, while Plaintiffs seek to utilize the Armstrong Incident Injury Report for purposes of refreshing the recollection of Baldwin or impeaching his testimony, the Court questions whether Baldwin is qualified to render an opinion regarding the cause of the accident or to render a recommendation to prevent the injury in this design defect case. This issue should be addressed before counsel questions Baldwin about the cause of the accident or his recommendation on how to prevent the injury. Finally, even if the Court were to determine that

the KOSML Report[1] satisfied the requirements of Fed. R. Evid. 803(6) or 803(8), the Court questions how the KOSML Report is relevant to Plaintiffs' design defect case.

### 3. CGM America and/or Caterpillar Inc. Risk Assessment Documents and Procedures

Defendant moves to exclude CGM America and/or Caterpillar Inc. risk assessment documents and procedures. Defendant states that it anticipates that Plaintiffs will seek to introduce these documents and procedures into evidence and argue to the jury that had CGM America utilized these available risk assessment documents and procedures when it incorporated a "hand hold" into the design of the RB 220, they would have led to a finding of a design defect. Defendant makes two arguments. First, Defendant contends that although CGM has been unable to locate the records indicating that formal risk assessment procedures were documented and/or performed when the hand hold was incorporated into the machine design by a predecessor company, no definite evidence establishes that a risk assessment was not undertaken. Second, Defendant argues that these documents and procedures are not relevant because "no competent evidence establishes that the undertaking of risk assessments as set forth in the plaintiffs' proposed exhibits would lead to a finding the design to the hand hold creates an unreasonable danger in the machine." (Defendant's Motion at 8.) Thus, the crux of Defendant's argument is that without competent and timely disclosed expert testimony that the specific risk assessment documents and procedures that Plaintiffs seek to introduce into evidence would lead to a finding of a design defect, the documents and procedures are themselves irrelevant, for their mere existence does not make the roof bolter's allegedly defective design any more or less likely. (Id.)

The Court disagrees. The Court finds that the risk assessment documents and procedures employed by Defendant in evaluating the design of its machines are relevant to the issue of

---

[1] The parties did not attach the KOSML Report to either the motion or response.

whether the Defendant negligently designed the roof bolter. CGM disclosed several internal Caterpillar risk management procedures its engineers utilize to ensure the safety and functionality of its products prior to placing them on the market. In fact, corporate representative Kevin Kline confirmed that CGM utilized Caterpillar's risk assessment policies and procedures. (Klein Dep. at 43.) The risk assessment documents presumably address, among other items, the foreseeable use and/or misuse of a product. These documents include a document entitled "Potential Failure Mode and Effects Analysis" which addresses the methods manufacturers should utilize to identify how their products can fail, including the use of "root cause analysis" to foresee these potential failures so its engineers can make appropriate modifications. (DN 129, Ex. D.) In both their reports and subsequent affidavits, Plaintiffs' experts disclosed opinions that CGM was negligent in that it did not consider the possibility of crushing injuries to the hand of an operator who used the hand hold and that CGM failed to address the foreseeable use and/or misuse of the subject RB 220 roof bolter. (Spadaro Report at 3-4, DN 45-15; Boutaugh Aff., DN 45-06.) Thus, Defendant's risk assessment policies and procedures arguably confirm Plaintiffs' experts' opinions that the company should have taken into consideration the environment in which the RB 220 roof bolter is used, including foreseeable misuses and unintended consequences of its operators.

Accordingly, contrary to Defendant's argument, an examination of the Defendant's risk assessment policies and procedures in conjunction with the testimony of Plaintiffs' experts suggests that if Defendant had considered these policies and procedures, Defendant would have concluded that a design defect existed and would not have placed the roof bolter on the market. The motion in limine is **DENIED**.

### 4. Relationship between Caterpillar, Inc. and CGM America

Defendant moves to preclude the Plaintiffs and their witnesses from referring to CGM generally as "Caterpillar," from focusing unnecessary attention to the parent/subsidiary relationship between Caterpillar and CGM, and/or by introducing or referencing documents that are strictly Caterpillar documents, including but not necessarily limited to Press Release of Caterpillar Regarding Sale of Underground Coal Mining Equipment to Armstrong Coal, Information from Caterpillar Website about Caterpillar Global Mining, Caterpillar Revenue Reports, and various Caterpillar documents. Defendant maintains that the relationship between CGM and Caterpillar has nothing to do with whether the product at issue, the RB220 roof bolter, is defective as Plaintiffs' claim or whether or to what extent Plaintiffs may be entitled to damages. Defendant further argues that allowing Plaintiffs to suggest or imply that CGM and Caterpillar are somehow interchangeable or the same presents a substantial risk of confusion and prejudice.

Plaintiffs object arguing the history of the roof bolter, how it came to CGM, the sale of the roof bolter under the Caterpillar brand, and the fact that CGM uses Caterpillar risk assessment policies to assess its machines are relevant to the determination of whether the roof bolter was distributed in an unreasonably dangerous condition. Plaintiffs contend that by seeking to exclude this evidence, CGM is attempting to preclude Plaintiffs from giving the jury the true picture of the acquisition, assessment, and distribution of the defective subject roof bolter. Plaintiffs also argue that relevant issues in this case are whether or not a risk assessment was ever done to assess the safety of the placement of the operator's handle and also whether CGM should have assessed the safety of the roof bolter as it does with new products when it acquired it from Bucyrus.

The motion in limine is **GRANTED IN PART AND DENIED IN PART**.

First, the Court agrees with the Defendant that the parties should not refer to CGM as Caterpillar. The Defendant in this case is CGM.

Second, the Court believes that evidence related to the general history of the RB-220, the purchase of Bucyrus by Caterpillar, the formation of CGM by Caterpillar, and the fact that CGM sold the roof bolters under the Caterpillar brand is admissible to provide the jury with the general background of the product's history. In fact, many of the Defendant's own witnesses worked for predecessor companies of CGM. The Defendant doesn't appear to seek to preclude this type of historical information. Instead, Defendant seeks to preclude Plaintiffs and their witnesses from focusing *unnecessary* attention on the parent/subsidiary relationship.

Third, as discussed in more detail in section B.3., Caterpillar risk assessment policies and practices and related documents are relevant in this matter. Defendant utilizes Caterpillar risk assessment policies and practices in conducting risk assessments of its products. Defendant's risk assessment policies and procedures arguably confirm Plaintiffs' experts' opinions that the company should have taken into consideration the environment in which the RB 220 roof bolter is used, including foreseeable misuses and unintended consequences of its operators.

Finally, the Court will address the admissibility of the above referenced documents when it reviews the Defendant's objection to exhibits at a later date. With that said, as the Court noted in section A.4., the financial condition or net worth of Caterpillar or CGM and the purchase price of Bucyrus are not relevant to the design defect claim. As noted by the Kentucky Supreme Court, "the parties may not present evidence or otherwise advise the jury of the financial condition of either side of the litigation." Hardaway, 977 S.W.2d at 916. The parties should keep this in mind when they submit their updated exhibit list pursuant to the Court's scheduling order.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motions in limine by Defendant, Caterpillar Global Mining America, LLC, to preclude the introduction of certain evidence at trial [DN 115, DN 116] are **GRANTED IN PART AND DENIED IN PART** consistent with this Opinion.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

August 8, 2017

cc: counsel of record