UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:14CV-00022-JHM

BEAU BROOKS and TINA BROOKS                                              PLAINTIFFS

V.

CATERPILLAR GLOBAL MINING AMERICA, LLC                                    DEFENDANT

MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Plaintiffs, Beau Brooks and Tina Brooks, to preclude portions of Jeff Looney's testimony at the trial [DN 181]. Fully briefed, these matters are ripe for decision.

I. BACKGROUND

This is a product-liability case against Defendant, Caterpillar Global Mining America, LLC ("CGM"), arising out of an accident that happened in May of 2013. Plaintiff, Beau Brooks, a Western Kentucky coal miner, sustained injuries to his left hand when his hand was crushed between a rib of coal and a Caterpillar RB220 Roof Bolter. Plaintiffs allege that the injury occurred because Brooks was holding onto the operator handle of the roof bolter that extended his hand beyond the roof and outside the protective operator compartment. Plaintiffs contend that the crush injuries would not have occurred if CGM's operator handle had not been located so close to the edge of the roof bolter's operator compartment that Brooks left hand was left unprotected.

II. DISCUSSION

Plaintiffs move to exclude portions of Jeff Looney's trial testimony. Plaintiffs originally deposed Jeff Looney in June of 2016. On September 25, 2017, Defendant took Looney's

deposition a second time expressing the intent to offer the video deposition at the trial of this matter. A review of the Court's previous decision with respect to the testimony of Looney is helpful.

### 1. Previous Motion in Limine [DN 121] and Opinion [DN 142]

In March of 2017, Plaintiffs filed a motion in limine to preclude Defendant from presenting evidence that a risk assessment or hazard analysis was ever performed on the subject roof bolting lines, and/or its predecessors by any entities at any time because (1) the company's engineers admit they have no first-hand knowledge of the existence of the documents and never witnessed the specific risk assessment or hazard analysis being performed, and (2) CGM acknowledges that it has been unable to locate any documents which demonstrate a formal risk assessment was performed on the SR200, RB2-52A, and/or RB 220 roof bolting machines by any of the predecessor companies. [DN 121.] Plaintiffs specifically objected to the testimony of CGM engineers, Jeff Rector, Jeff Looney, and Kevin Klein.

In its previous Opinion, the Court noted that Federal Rule of Evidence 602 provides that

> "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. "'The threshold for Rule 602 is low[,]' and '[t]estimony should not be excluded for lack of personal knowledge unless no reasonable [factfinder] could believe that the witness had the ability and opportunity to perceive the event that he testifies about.'" Deere & Co. v. FIMCO Inc., 2017 WL 1758069, *2 (W.D. Ky. May 4, 2017)(quoting United States v. Smith, 516 Fed. Appx. 592, 595 (6th Cir. 2013)).

(Memorandum Opinion and Order, DN 142 at 5.) The Court further addressed the testimony of CGM engineer, Jeff Looney. The Court specifically held:

> Jeff Looney, a 26-year product engineer of CGM and its predecessor companies, testified as to his own personal experience

> regarding his engineering position. Looney began his engineering career with Simmons Rand in 1988 and stayed with all the predecessor companies. He left Caterpillar in 2014. Looney testified that the roof bolter was originally designed by Simmons Rand in 1990 under a chief engineer, Jim Gibson. The record reflects that Gibson passed away before discovery in this case began. At that time, Looney was not on the design team for the roof bolters. He testified that he began working on the roof bolter design team a few years later. He testified that as an engineer he engaged in risk analysis on a day-to-day basis as part of his design. He also testified that MSHA had itself inspected the design of the RB220 tram canopy and handhold. (Looney Dep. at 108-109.) Finally, Looney testified that "there is evidence of risk assessments because there's – there's notice and warning tags and caution tags all over the roof bolter. So there had to have been some kind of risk . . . assessment done, or those wouldn't be there." (Id. at 78-79.) Looney's testimony regarding his day-to-day risk assessment of the roof bolter, MSHA inspections, and the existence of warning tags [indicating] some kind of initial risk assessment satisfies the personal knowledge requirement of Fed. R. Evid. 602.

(Memorandum Opinion and Order, DN 142 at 7.)

### *2. Current Motion in Limine*

Plaintiffs move the Court to preclude portions of Looney's September 25, 2017, testimony that mislead the jury into believing that CGM or any of its predecessors received approval from MSHA for the design of the operator's handhold or the construction of the canopy, and/or whether or not CGM complied with MSHA in the design and placement of the defective operator's handle on the subject roof bolter [DN 181].

Specifically, Plaintiffs argue that it is misleading for the jury to believe that MSHA inspected the operator handholds on the subject roof bolting machine and/or "approved" the location of the operator handholds. Plaintiffs contend that certain portions of the trial deposition testimony of Looney is misleading. (September 25, 2017, Looney Dep. at 67-68, 88.) Plaintiffs submit the affidavit of their expert, Jack Spadaro, former Superintendent of the MSHA Academy from 1998 to 2008, in which he states that based on his experience and training, operator

3

handholds on canopies are not inspected or approved by MSHA. Further, Spadaro avers that MSHA does not have any specific guidelines for the actual location of operator handholds, and MSHA does not ever approve or disapprove of the location of an operator handhold. According to Spadaro, coal mining equipment manufacturers utilize a certified professional engineer (P.E.) to evaluate whether the equipment complies with MSHA regulations.

First, the September 25, 2017, deposition testimony of Looney reflects that he did not testify on direct examination that MSHA approved the design of the operator's handhold or that CGM complied with MSHA in the design and placement of the operator's handle on the roof bolter. In fact, Looney admits during his deposition that MSHA is not required to approve the handhold but rather a professional engineer evaluates the canopy and its safety concerns before drafting a P.E. certified letter regarding the same. (September 25, 2017, Looney Dep. at 41, 72.)[1] On direct examination, Looney further testified regarding the design process of the roof bolter. (Id. at 67-68.)[2] While Plaintiffs argue that Looney's testimony regarding the design process is

---

[1] Looney testified on direct examination that:
A. I mean, even the mining equipment has to be designed to certain MSHA standards. And there's a code of federal regs that you have to follow for certain things like canopies, lights. I mean, there's all kinds of dust collection systems on a roof bolter. It all has to be certified by MSHA. The canopies have to be certified now by the professional engineer.
Q. And canopies, you're talking about roof bolter canopies?
A. Yeah. I mean, roof bolter canopies, coal hauler canopies, scoop canopies, all canopies.
Q. Okay. Canopies for any underground mining equipment?
A. Right.
Q. Okay. So MSHA would have some responsibility to –
A. Well, MSHA don't certify those. They actually – You have to follow the federal regs and you have to get it certified by a PE, a professional engineer.
Q. Does MSHA have some enforcement ability if these aren't certified or if they don't comply with regs?
A. They'll inspect them, and they have to be per the drawings, you know, that the PE would stamp off on, so.
Q. Okay, So MSHA –
A. There has to be a certification letter, basically, or a stamp drawing.
(September 25, 2017, Looney Dep. at 41-42.)
[2] Specifically, Looney testified on direct examination as follows:
Q. Okay. All right. So generally take me through what you understand the design process entailed.
A. Uh-huh (affirmative).
Q. You mentioned test track prototypes.

confusing and misleading because it suggests that MSHA approved the design and placement of the subject operator handhold, the Court can find no discussion in this exchange regarding the handhold.

Second, the cross-examination by Plaintiffs' counsel confirmed Looney's direct examination. For example, Plaintiffs' counsel specifically questioned Looney regarding the fact that there are no MSHA regulations or CFRs that addresses the location of the operator handles. (Id. at 83.) Looney also testified that MSHA officials inspect the location of lights, vacuum on the machines, the dust collection vacuum, canopy configuration and strength on underground mining equipment (Id. at 83-85). Looney further testified on cross-examination that with respect to canopies, he was only aware of regulations that address the canopies strength and configuration. (Id. at 85.) Looney again confirmed that a P.E. has to certify that a canopy meets federal regulations. (Id.)

---

A. Uh-huh (affirmative). I mean, they – they would do complete design reviews, you know, and go through the machine and test the machine, make sure it performed correctly, make sure it had all of the safety criteria met, you know, as far as the CFR goes –
A. Okay.
A. – which is Code of Federal – Federal Regs, you know, on the canopies. And even the lights on the machines have to be in a certain location. And that's all – they all have to be MSHA approved on face equipment, so.
Q. Okay. So you mentioned safety. How does – how was safety involved or incorporated into the design process?
A. Yeah. For instance, I mean that's what we followed was the CFR. And anytime there was any questions about speed of the controls and, you know, speed of the operations of the machine, we would contact MSHA. I mean, we had a close relationship with MSHA. And that was –
Q. Okay. And you're referring to CFRs. What do you mean by that?
A. That's the Code of Federal Regulations.
Q. Okay. And you mentioned earlier the federal regs or regulations –
A. Right
Q. – have some –
A. Guidelines.
Q. Guidelines.
A. That you had to follow.
Q. Okay.
A. And designing the equipment, so you just don't design equip – equipment the way you want to. There's – there's guidelines you got to follow.
Q. To your knowledge, if you know, did the RB 220 roof bolter comply with those CFR, federal regs?
A. Oh, most definitely.

The primary objection by Plaintiffs appears to be Looney's response to one of Plaintiffs' counsel's questions on cross-examination. The following exchange occurred:

> Q. Okay. Now, can you sit here and tell this jury of your own knowledge for a fact that MSHA reviewed the location of the operator handle and gave approval for its location?
> A. I can't say in that particular –
> Q. All right sir. Let me ask you about a few other things. It –
> A. I do know that MSHA did come and review the machines. We invited them in –
> Q. Sure.
> A. – to look at this particular machine when we was at Pulaski, because we want to make sure we make the safest machine possible. So we did invite them in. They actually looked at the – all the handles and the controls and they made suggestions, which their suggestions were very minor, so.
> Q. Let me ask you this sir, can you tell this jury what date the operator handle was placed on this machine?

(Id. at 87-88.)

Looney's testimony is not misleading regarding the applicable MSHA regulations related to roofbolter canopies and handholds. Looney specifically testified that he could not say that MSHA reviewed the location of the operator handle and approved the location. A review of Looney's testimony further reflects that he believes that Defendant brought MSHA personnel in at Pulaski to look at the roof bolter, and those individuals looked at the handles and controls and made suggestions. Additionally, Looney's answer was in direct response to a question asked by Plaintiffs' counsel. Finally, Looney's testimony is based on his personal experience during his employment with CGM and is relevant to Plaintiffs' negligence claim. Accordingly, the motion in limine is denied.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Plaintiffs, Beau Brooks and Tina Brooks, to preclude portions of Jeff Looney's testimony at the

trial [DN 181] is **DENIED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

November 22, 2017