# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

CIVIL ACTION NO. 4:14CV-00022-JHM

BEAU BROOKS and TINA BROOKS                                                              PLAINTIFFS

V.

CATERPILLAR GLOBAL MINING AMERICA, LLC                                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, Caterpillar Global Mining America, LLC, to preclude or limit the testimony of Kristy Fleming [DN 145] and on a motion by Defendant for leave to file a supplemental memorandum in support of its motion to preclude or limit the testimony of Kristy Fleming [DN 183]. Fully briefed, these matters are ripe for decision.

## I. BACKGROUND

This is a product-liability case against Defendant, Caterpillar Global Mining America, LLC ("CGM"), arising out of an accident that happened in May of 2013. Plaintiff, Beau Brooks, a Western Kentucky coal miner, sustained injuries to his left hand when his hand was crushed between a rib of coal and a Caterpillar RB220 Roof Bolter. Plaintiffs allege that the injury occurred because Brooks was holding onto the operator handle of the roof bolter that extended his hand beyond the roof and outside the protective operator compartment. Plaintiffs contend that the crush injuries would not have occurred if CGM's operator handle had not been located so close to the edge of the roof bolter's operator compartment that Brooks left hand was left unprotected.

## II. DISCUSSION

### A. Motion for Leave to File a Supplemental Memorandum [DN 183]

Defendant filed a motion for leave to file a supplemental memorandum in support of its motion to preclude or limit the testimony of Kristy Fleming. [DN 183] Plaintiffs object to the Defendant's motion for leave to file a supplemental memorandum. [DN 196]. Defendant filed a response to the supplemental memorandum tendered by Defendant. [DN 199]. The Court **grants** the Defendant's motion for leave to file the supplemental memorandum [DN 183] and has considered the memorandum [DN 183-1] and Plaintiffs' response [DN 199] in determining the motion to preclude Fleming's testimony.

### B. Defendant's Motion to Preclude or Limit Testimony of Kristy Fleming [DNs 145, 183-1]

In support of their claims against Defendant, Plaintiffs have indicated their intent to call as an expert witness, nurse practitioner Kristy Fleming. Defendant moves the Court to preclude or limit the testimony of this expert at trial arguing that her testimony does not meet the standards of Fed. R. Evid. 702 and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).

*1. Standard*

Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert evidence is both reliable and relevant.

Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 407 (6th Cir. 2006) (citing Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999)).

> Parsing the language of the Rule, it is evident that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Id. Third, the testimony must be reliable. Id.

In re Scrap Metal Antitrust Litig., 527 F.3d 517, 528-29 (6th Cir. 2008). "Rule 702 guides the trial court by providing general standards to assess reliability." Id.

In determining whether testimony is reliable, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. The Supreme Court identified a non-exhaustive list of factors that may help the Court in assessing the reliability of a proposed expert's opinion. These factors include: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." Id. at 592–94. This gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead extends to "all 'scientific,' 'technical,' or 'other specialized' matters" within the scope of Rule 702. Kumho Tire Co., 526 U.S. at 147. Whether the Court applies these factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Kumho Tire Co., 526 U.S. at 150 (quotation omitted). Any weakness in the underlying factual basis bears on the weight, as opposed to admissibility, of the evidence. In re Scrap Metal Antitrust Litig., 527 F.3d at 530 (citation omitted).

Defendant moves to preclude Plaintiffs' expert, Kristy Fleming, from opining: (a) that Beau's accident and injury caused him psychological injury; (b) that Beau's post-accident condition caused later neck, shoulder, and right arm/hand pain; (c) that Beau's decision to leave the mines and accept alternative employment at substantially less pay was, if not necessitated by his injuries, justified and reasonable; and (d) that as a result of the subject accident, he will continue to experience "pain and neuropathic pain." for the remainder of his life. (Supplemental Motion at 2.) Specifically, Defendant argues that Fleming is not qualified to offer opinions regarding causation or what kind of work Beau can or cannot perform, that Fleming's testimony about Beau's psychological issues and career change are not relevant, and Fleming's opinions are unreliable.

## 2. *Qualification of Fleming*

First, Defendant maintains that because Fleming is not a medical doctor, she is not qualified to testify as an expert on causation. See Hamilton v. Pike County, Ky., 2012 WL 6570508, *4 (E.D. Ky. Dec. 17, 2012)(noting that Kentucky courts have not directly addressed the question of whether a nurse can testify as a hired medical causation expert). In contrast to the cases cited by Defendant, Fleming is testifying in the present case as a treating nurse practitioner, not a hired expert. Fleming is not offering an opinion on the standard of care of a physician or another medical practitioner. These cases do not prohibit a treating nurse practitioner from testifying regarding her treatment of a patient and her opinions with respect to the patient's injury or treatment. Fleming is not disqualified from offering her opinion merely because she is a nurse practitioner.

Second, Defendant argues that Fleming possesses no particular knowledge, skill, experience, training, or education that would permit her to testify regarding her diagnosis of her

patients' psychological conditions, repetitive and overuse stress injuries, hand injuries and neuropathic pain, and the functional capacity or the type of a work a person can or cannot do.

Initially, the Court would note that it does not appear to the Court that Fleming is being offered by Plaintiffs as an expert witness in the areas of "functional capacity or the type of a work a person can or cannot do" or psychological impairments such as mood disorder or anger issues.

Fleming is an Advanced Practice Registered Nurse and provides general family nurse practitioner services under Owensboro Health Muhlenberg Community Hospital. As a primary care provider, she is permitted to render primary care services including diagnosis, assessment, and treatment of patients. She is permitted to prescribe medications to patients. Fleming has admitting privileges with Owensboro Health Muhlenberg Community Hospital in Greenville, Kentucky. Fleming has been a nurse for 18 years and a nurse practitioner for 8 of those years. As part of Fleming's practice, she routinely assesses patients with pain, including neuropathic pain and pain caused by inflammation of joints from overcompensation for injuries to other parts of the body. (Fleming Aff. at ¶ 4.) Fleming has served as Beau's primary care provider for two years and during that period of time treated his left hand and right shoulder symptoms, in addition to his psychological conditions. Generally, courts recognize that "[i]t is within the normal range of duties for a health care provider to develop opinions regarding causation and prognosis during the ordinary course of an examination." Fielden v. CSX Transp., Inc., 482 F.3d 866, 870 (6th Cir. 2007)(citing Martin v. CSX Transp., Inc., 215 F.R.D. 554, 557 (S.D. Ind. 2003)). The Court finds Fleming is qualified to testify regarding her evaluation, treatment, and diagnosis of Beau, including those related to his left hand pain, neuropathic pain, and right shoulder pain, based on her experience and training as a nurse practitioner.

*3. Relevancy of Psychological Issues*

Defendant seeks to preclude testimony from Fleming regarding an opinion that Beau's accident and injury caused him mood/affective disorder or anger issues arguing that these opinions are not relevant to Plaintiffs' claims against Defendant. In response, Plaintiffs indicate that they do not plan to question Fleming about Beau's mood disorders or anger issues that pre-existed the accident. Finally, a review of the deposition of Fleming clearly reflects that Fleming does not attribute Beau's mood disorder or anger management issues to the accident. Accordingly, the motion in limine to preclude Fleming from testifying that Beau's accident and injury caused him mood/affective disorder or anger issues is **granted**.

*4. Relevancy of Fleming's Suggestion that Beau Find Another Job*

Defendant moves to exclude any testimony or evidence related to Fleming suggesting to Beau that he consider finding another job that allowed him to work the same shifts every day due to his mood disorder asserting the testimony is irrelevant. A review of the deposition of Fleming reflects that Fleming testified in response to a question from defense counsel that she never recommended to Mr. Brooks that he should find another job because of any functional limitations with his left-hand injury; instead, she had recommended that "his mood disorder might be better if he was not on shift work because shift workers have worse mood disorders than others just because they're out of that natural rhythm." (Fleming Dep. at 78-79.) As noted above, Fleming is precluded from testifying that the accident caused Plaintiff's mood disorder. However, there will be a question as to why the Plaintiff quit his job at the coal mine to take a lower paying job. Presumably, the Plaintiff will suggest that he left his employment at the coal mine because of his hand injuries. According to Plaintiff, the Defendant will question Plaintiff's work ethic and his desire to continue coal mining work. Fleming's testimony that she suggested

he consider other work due to his mood disorder, while not helpful to show that he left the mines due to his hand injury, at least is helpful to refute any suggestion by the Defendant as to his work ethic. Thus, Defendant's motion to exclude this testimony is **denied.**

### 5. *Unreliable Opinions*

Defendant maintains that to the extent Fleming may opine the following opinions, these opinions lack sufficient reliability and should be excluded: (a) Beau's accident and injury caused him psychological injury; (b) Beau's post-accident condition caused later neck, shoulder, and right arm/hand pain; (c) Beau's decision to leave the mines and accept alternative employment was justified and reasonable; and (d) as a result of the subject accident, Beau will continue to experience "pain and neuropathic pain" for the remainder of his life.

First, Fleming is precluded from testifying that the accident caused Plaintiffs' mood disorder or anger issues. Thus, the Court need not determine whether Fleming's testimony regarding Beau's mood disorder or anger issues is reliable.

Second, Defendant requests an order precluding Fleming from testifying at trial that Plaintiff's original injury and later "overcompensating" for that injury caused the neck, shoulder, and right arm/hand pain of which Beau complained. Defendant maintains that Fleming's testimony reveals that her opinion is not based on objective, reliable facts and testing, but rather on what Beau told her. Defendant contends that in her deposition, Fleming acknowledged that she did not witness the accident, did not discuss the actual mechanisms of the injury with Beau, and that her diagnosis was based on what Beau told her.

The deposition and affidavit of Fleming reveals that she began treating Beau approximately two years ago. She testified that she tested and palpated Beau's left hand and right shoulder on multiple visits to her office. She further testified that she determined based on

obtaining a patient history when pain in both his left hand and right shoulder began. (Fleming Aff. at ¶ 6.) She testified that Beau complained for the first time in an October 20, 2016, office visit that he had been experiencing shoulder pain for over a month. (Fleming Dep. at 79-80.) She further testified that Beau indicated that the problem had been gradually worsening. (Id. at 80.) Fleming explained that she discussed with Beau that he had been lifting and stacking pallets with only his right hand and arm. (Id. at 84.) As Beau's treating nurse practitioner, Fleming performed a physical examination, indicating that Beau exhibits tenderness, pain, and spasm in his right shoulder. (Id. at 80-81.) Fleming testified that when she evaluated Beau's right shoulder, she felt abnormal muscle knots in his shoulder. (Fleming Aff. at ¶7.) Fleming testified that she believed she performed a range of motion examination, but because she did not chart it she could not affirmatively say it was performed. (Fleming Dep. at 80-81; Fleming Aff. at ¶ 7.) Based on her objective tests and observations of Beau, she concluded that Beau had been compensating for dysfunction with his injured left hand and now has some overuse-type soreness and injuries to his right shoulder. (Fleming Dep. at 77, 84; Fleming Aff. at 7.) Fleming recommended physical therapy. (Fleming dep. at 85.)

Fleming's observations related to Beau's right shoulder pain were based on her personal observations made during treatment in light of her training and experience as nurse practitioner. Patient histories, including a patient's subjective report of pain, are part of diagnosis and treatment by health care professionals. "[F]ederal courts have held that a patient's subjective complaints and oral history provide a reliable basis for treating and non-treating physicians to form their opinions." Mattingly v. Home Depot U.S.A., Inc., 2009 WL 10676568, at *7 (E.D. Tex. Oct. 20, 2009). Any perceived weakness in Fleming's underlying factual basis for her diagnosis bears on the weight, as opposed to admissibility, of the evidence and are proper

8

matters for cross examination. In re Scrap Metal Antitrust Litig., 527 F.3d at 530 (citation omitted). Accordingly, the motion in limine as it relates to Fleming's testimony regarding this matter is **denied**.

Third, based on the same argument that Fleming's diagnosis is based on Beau's subjective report of pain, Defendant contends that Fleming's possible opinion that Beau's decision to leave the mines and accept alternative employment was justified and reasonable lacks sufficient reliability. Plaintiffs did not respond to this argument and it is unclear whether Plaintiff intends to elicit this testimony from Fleming or not. It is clear that Fleming has testified that she did not suggest Plaintiff find alternative employment because of his hand injury. And the Court has ruled that she may testify that her suggestion to find other employment was due to his mood disorder. Thus, she could obviously opine that following her suggestion was reasonable and justified. However, if Plaintiff intends to elicit any other testimony from Fleming related to Plaintiff's decision to leave his coal job, he shall advise the Court so as to allow the Defendant an opportunity to be heard on the matter.

Fourth, Defendant argues that Fleming's opinion that as a result of the subject accident, Beau will continue to experience "pain and neuropathic pain" for the remainder of his life lacks sufficient reliability. Defendant points to Fleming's testimony that Beau's reports of pain have lessened over time, Beau's pain is now characterized by Fleming as "in the mild category," and Fleming acknowledged that Beau's complaints of pain are "pretty much" subjective.

In her affidavit, Fleming testified that in her position as a nurse practitioner, she routinely assesses patients with pain, including nerve pain for which she prescribes Neurontin and Gabapentin. (Fleming Aff. at ¶ 4.) The deposition and affidavit of Fleming reveals that she began treating Beau approximately two years ago. She testified that she evaluated and treated

Beau's neuropathic pain in his left hand based on "observing and questioning" Beau. (Id. at ¶5.) Fleming tested and palpated Beau's left hand on multiple visits to her office. She further testified that she determined based on obtaining a patient history when pain in his left hand began. (Fleming Aff. at ¶ 6.) Based on her objective tests and observations of Beau, along with her training, experience, and education, she opines that Beau's neuropathic pain in his hand is permanent. (Fleming Aff. at ¶8.)

As noted above, patient's subjective complaints of pain provide a reliable basis for treating health care providers to form their opinions. Mattingly, 2009 WL 10676568, at *7). Furthermore, any perceived weakness in Fleming's underlying factual basis for her diagnosis bears on the weight, as opposed to admissibility, of the evidence and are proper matters for cross examination. In re Scrap Metal Antitrust Litig., 527 F.3d at 530 (citation omitted). Defense counsel may cross-examine Fleming regarding Beau's improved neuropathic pain. Accordingly, the motion in limine as it relates to Fleming's testimony regarding this matter is **denied**.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant for leave to file a supplemental memorandum in support of its motion to preclude or limit the testimony of Kristy Fleming [DN 183] is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion by Defendant to preclude or limit the testimony of Kristy Fleming [DN 145, DN 183-1] is **GRANTED IN PART AND DENIED IN PART** consistent with this Opinion.

cc: counsel of record

Joseph H. McKinley, Jr., Chief Judge
United States District Court

November 22, 2017